UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY ENGLAR, et al.,

        Plaintiffs,                Civil Action No.
                                            04-CV-73977, 04-CV-73957

vs.

                                            PAUL D. BORMAN

CHIEF JUDGE LINDA DAVIS          UNITED STATES DISTRICT JUDGE
*of the 41B District Court, individually and in*
*her official capacity.*

        Defendant.
_____/

## ORDER

## I.  INTRODUCTION

On December 21, 2010, the Court held a status conference hearing regarding the significant Sixth Circuit decision in *Pucci v. 19th District Court*, 628 F.3d 752 (6th Cir. 2010), which impacted the instant case – specifically, the issue whether the Defendants 41B District Court and Chief Judge Linda Davis are entitled to sovereign immunity.

At that December 21, 2010 hearing, the parties stipulated that both Defendants, Court and Chief Judge Davis in her official capacity were entitled to sovereign immunity, and that Defendant 41B District Court should be dismissed.  (Hr'g Tr. 19).  Plaintiffs asserted that valid claims against Chief Judge Linda Davis remained; counsel for Defendant raised several arguments that certain other claims against Chief Judge Davis should also be dismissed.  (Hr'g Tr. 6-18).

1

Defendant argued (1) that Plaintiffs' claim for reinstatement is not appropriate prospective injunctive relief; (2) that Plaintiffs' claim for reinstatement circumvents sovereign immunity, and (3) that this Court had previously ruled that Defendant Davis is entitled to qualified immunity, and because that ruling was not disturbed by the Sixth Circuit on appeal it is now the "law of the case." (Hr'g Tr. 26-28).

This Court requested post-hearing briefing. On January 4, 2011, Defense counsel filed a Supplemental Brief on Behalf of Defendant, Chief Judge Linda Davis,[1] Regarding Defendant's Immunity. (Dkt. No. 123). Plaintiffs responded on January 18, 2011 (Dkt. No. 124), and Defendant replied on January 25, 2011 (Dkt. No. 125).

## II. DISCUSSION

### A. Claims Against Chief Judge Linda Davis in Her Personal Capacity

Defendant first argues that Plaintiffs' Fourteenth Amendment due process claim against Chief Judge Davis is barred by qualified immunity. Defendant asserts that in its September 22, 2006 Opinion and Order (Dkt. No. 64), this Court held that Defendant Chief Judge Linda Davis is entitled to qualified immunity, that this holding was not disturbed on appeal, and that this holding now constitutes the law of the case.

"The doctrine of qualified immunity protects government officials 'from liability

---

[1] The Court requested that Defendant file one brief, "three pages on the reinstatement issue and then go up to five on the other two issues" for a total of eight pages (Hrg Tr. 32). Defendant filed a 23-page brief; discussed qualified immunity for 11 pages (Def.'s Br. 2-12), sovereign immunity for seven pages (Def.'s Br. 13-19), and reinstatement for about three pages (Def.'s Br. 19-22). After Plaintiffs responded, Defendant filed seven more pages of argument in her reply brief. Future violation of Court orders and Court rules (LR 7.1) by Defendant will result in sanctions.

for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815 (2009). The immunity does not apply when: (1) "the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right[,]" and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 816.

Defendant's argument fails because it does not give appropriate consideration to the Sixth Circuit's prior decision in this case. *See Barachkov v. 41B District Court*, 311 Fed. Appx. 863 (6th Cir. 2009). The Sixth Circuit then found that "there exists a direct conflict in the evidence regarding the exact contours of the termination policy – if any existed – employed by Judge Cannon . . . This is a genuine issue of fact which requires further development of the record and cannot be properly resolved on summary judgment." *Id.* at 872. Accordingly, if Plaintiffs were "just cause" employees, their constitutional right to due process would have been clearly established, and Defendant would have violated that right by discharging Plaintiffs with no process.

The Sixth Circuit addressed qualified immunity with regard to a similar due process claim in *Pucci*, *supra*. In that case, the plaintiff was a court employee who claimed she was discharged in retaliation for complaints regarding the chief judge's use of religious language on the bench. 628 F.3d at 756. The plaintiff sued both the district court and chief judge. Like the Plaintiffs in the instant case, the plaintiff in *Pucci* argued that the chief judge violated her right to due process because she had a property interest in

3

continued employment. *Id*. at 759. In holding that the chief judge was not entitled to qualified immunity on plaintiff's due process claim, the Sixth Circuit stated:

> Obviously, if Pucci is ultimately found to have a property interest in her employment, her right to at least some pretermination process was clearly established. Since she received no process, [the chief judge] is not entitled to qualified immunity.

*Id*. at 767.

This reasoning applies in the instant case. Because the Sixth Circuit found a question of fact existed as to the due process claim, Plaintiffs may have had a property interest in their employment when they were terminated without process. As in *Pucci*, Plaintiffs' constitutional rights would have been clearly established, and Defendant Chief Judge Davis would not have been entitled to qualified immunity. Thus, if there is a question of fact as to Plaintiffs' due process claim, as there was in *Pucci*, then Defendant Chief Judge Davis is not entitled to qualified immunity and is subject to suit in her personal capacity.

**B. Suit Against Chief Judge Linda Davis in Her Official Capacity**

Defendant argues that claims against her in her official capacity "are attempting to circumvent the operation of sovereign immunity that shields the 41B District Court from any legal or equitable liability[.]" (Def.'s Br. 13). Defendant asserts that the prospective injunctive relief that Plaintiffs have requested – reinstatement – is the functional equivalent of relief against the 41B District Court, and is therefore barred by the Eleventh Amendment.

For support, Defendant relies on *Mumford v. Basinski*, 105 F.3d 264 (6th Cir. 1997).  In *Mumford*, the Sixth Circuit stated in a footnote that "cases against a state officer in which a claim for retrospective relief for *past* violation(s) of federal law is joined, such as the action at issue, are not exempted from the Eleventh Amendment's jurisdictional bar."  *Id*. at 270 n. 8 (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)) (emphasis in original).  The plaintiff in that case was seeking "damages, declaratory relief, and an injunction compelling his reinstatement with back pay and benefits plus interest."  *Id*. at 266.  The instant case is distinguishable from *Mumford*, because Plaintiffs are seeking reinstatement as *prospective* injunctive relief; Plaintiffs cannot seek back wages.

In *Thomson v. Harmony*, 65 F.3d 1314 (6th Cir. 1995), the Sixth Circuit held that reinstatement was appropriate prospective injunctive relief against public university officials.  In that case, the plaintiff, who was discharged from the University of Cincinnati College of Medicine, sued university officials in their personal and official capacities, requesting:

> reinstatement to a position as a researcher, an order that the hospital support his efforts for future research funding, and the defendants' expungement from his record of all negative entries arising from his dispute with [defendant] Dr. Harmony and the hospital.

*Id*. at 1317, n. 1.  The Court first noted that "[t]he university's hospital is an agent of the university that is entitled to its immunity from suit in federal court."  *Id*. at 1319.  However, the Court found that despite this immunity, the plaintiff was entitled to

5

reinstatement to a position at the hospital:

> Thomson is merely asking that if he prevails on the merits, the state must fulfill, through its employees, its pre-existing legal duty to comply with federal law. [*Ex Parte*] *Young*[, 209 U.S. 123 (1908)] and *Edelman*[ *v. Jordan*, 415 U.S. 651 (1974)] makes clear that a state has no interest in shielding its servants from such an order.

*Id*. at 1321.

Likewise, Plaintiffs in the instant case are requesting reinstatement and an injunction prohibiting further retaliation. (Compl. at 18, Dkt. No. 1). Although the 41B District Court is entitled to immunity, it has no interest in shielding Chief Judge Davis from an order compelling her to "comply with federal law." *Thomson*, 65 F.3d at 1321.

Moreover, the Sixth Circuit has already held that prospective injunctive relief is appropriate against Chief Judge Davis, and specifically, that it is not barred by the Eleventh Amendment:

> It is settled law that "[a] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"

*Barachkov*, 311 Fed. Appx. at 872-73 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985))).

Also, in *Pucci*, the Sixth Circuit dismissed the 19th District Court but upheld claims against Chief Judge Somers, stating, "Although Somers is entitled to sovereign immunity in his official capacity with respect to damages and retrospective relief, the sovereign-immunity doctrine does not bar Pucci's suit . . . against him in his official

6

capacity with respect to declaratory and injunctive relief." *Pucci*, 628 F.3d at 765.

Accordingly, Plaintiffs' claims for prospective injunctive relief against Defendant Chief Judge Linda Davis should be allowed to go forward – but not Plaintiffs' claims with regard to damages and back pay.

## C. Plaintiffs' Remedies

Defendant's final argument is that "[r]einstating Plaintiffs to their employment with the 41B District Court, only to see Plaintiffs terminated as the ultimate result, would be futile." (Def.'s Br. 20). Defendant also argues that Plaintiffs cannot claim they suffered any damages because, even if they had been given due process, they still would have been terminated. Defendant's argument here relies on the Court's previous Order, which found that Plaintiffs "were not completely forthcoming at the [SCAO] investigation" (Order at 14), and "that a reasonable official could have concluded that Plaintiffs knowingly or recklessly made false statements." (Order at 20). Defendant asserts that this now constitutes the law of the case and makes Plaintiffs' requested relief futile.

The law of the case doctrine "precludes a court from reconsideration of issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition." *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (citation omitted). Similarly, under the mandate rule:

> the trial court must proceed in accordance with the mandate and the law of the case as established on appeal. The trial court must implement both the letter and the spirit of the

7

> mandate, taking into account the appellate court's opinion and circumstances it embraces.

*United States. v. Moored*, 38 F.3d 1419, 1422 (6th Cir. 1994) (quoting *United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir. 1991)).

In its September 22, 2006 Order, this Court reasoned as follows: "Given the conclusions of [SCAO employee Deborah] Green, combined with the inconsistencies of Plaintiffs' own interviews and deposition testimony, the Court finds that a reasonable official could have concluded that Plaintiffs knowingly or recklessly made false statements." (Order at 19-20). The Sixth Circuit's emphasis was different, finding Plaintiffs' credibility immaterial on summary judgment:

> Despite the arguments of both parties, this appeal does not require us to determine the veracity of the speech at issue, or whether Judge Davis believed Appellants lied during their interviews. On the contrary, we need determine only whether Appellants can establish the existence of a genuine issue of material fact that they were terminated for engaging in speech protected by the First Amendment.

*Barachkov*, 311 Fed. Appx. at 869. Regarding the due process claim, the Sixth Circuit found that there was "a genuine issue of material fact which requires further development of the record and cannot be properly resolved on summary judgment." *Id*. at 872.

Although the Court's above reasoning in the September 22, 2006 Order is technically still intact, the "letter and spirit" of the Sixth Circuit's opinion is cause for the Court to reconsider its Order. By ordering re-opening of the record in remanding this case, the Sixth Circuit could have been expressing doubt as to the Court's holding

8

regarding Plaintiffs' testimony. *See E.E.O.C. v. Joint Apprenticeship Committee of Joint Industry Bd. of Elec. Industry*, 164 F.3d 89, 99-100 (2nd Cir. 1998) (holding that the district court erred in adhering to previous decision as the law of the case after remand, where court of appeals authorized the district court to re-open the record). It is within the Court's discretion whether to apply the law-of-the-case doctrine. *Rouse v. Daimler-Chrysler Corp.* 300 F.3d 711, 715 (6th Cir. 2002). There are three "exceptional circumstances" that allow a court to reconsider an issue previously decided: "(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." *Westside Mothers*, 454 F.3d at 538. The instant case could fit within the second exceptional circumstance, given the Sixth Circuit's decision on appeal.

However, it is not necessary for the Court to reconsider its previous decision. The Court only stated that "a reasonable official *could have* concluded that Plaintiffs" were not truthful in the SCAO investigation. (Order at 20) (emphasis added). The ultimate credibility determination remains with the trier of fact – the jury.

Moreover, "the denial of procedural due process should be actionable for nominal damages without proof of actual injury." *Carey v. Piphus*, 435 U.S. 247, 266 (1978). If Plaintiffs are entitled to due process, they are entitled to damages. Therefore, Defendant's argument should not result in dismissal of their claim. If the trier of fact determines that Plaintiffs were not entitled to process, or that they were, but were

9

justifiably terminated pursuant to that process, then dismissal of their claims is warranted.

### III.  CONCLUSION

For the reasons stated above, the Court concludes that going forward, Plaintiffs can:

(1) Raise claims against Chief Judge Linda Davis in her personal capacity, and

(2) Seek prospective injunctive relief against Chief Judge Linda Davis or her successor in her official capacity.[2]

**SO ORDERED**.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 14, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 14, 2011.

S/Denise Goodine
Case Manager

---

[2] Federal Rule of Civil Procedure 25(d) states that a successor is automatically substituted as a party when a public official ceases to hold office while the action is pending.