UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY ENGLAR and CAROL DIEHL,

    Plaintiffs,

vs.

Case No. 04-73957

Hon. Paul D. Borman

41B DISTRICT COURT for Clinton Township
Mt. Clemens and Harrison Township;
CHIEF JUDGE LINDA DAVIS, of the 41B
District Court, individually and in her official
capacity; and CHARTER TOWNSHIP OF
CLINTON,

    Defendants.
_____

PATRICIA BARACHKOV,

    Plaintiffs,

vs.

Case No. 04-73957

Hon. Paul D. Borman

41B DISTRICT COURT for Clinton Township
Mt. Clemens and Harrison Township;
CHIEF JUDGE LINDA DAVIS, of the 41B
District Court, individually and in her official
capacity; and CHARTER TOWNSHIP OF
CLINTON,

    Defendants.
_____

| | |
|---|---|
| DEBORAH L. GORDON (P27058) | PETER W. PEACOCK (P37201) |
| Attorney for Plaintiffs | Attorney for Defendants |
| 33 Bloomfield Hills Parkway, Ste. 275 | 10 S. Main Street, Ste. 400 |
| Bloomfield Hills, MI 48304 | Mt. Clemens, MI 48043 |
| (248) 258-2500 | (586) 466-7605 |
| | |
| | TIMOTHY S. FERRAND (P39583) |
| | Co-Counsel for Defendant Judge Davis, Only |
| | 43409 Schoenherr |
| | Sterling Heights, MI  48313 |
| | (586) 731-5000 |

_____/

## **DEFENDANT JUDGE DAVIS' RESPONSE TO PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS AND INTEREST**

## **INTRODUCTION**

As the Court is aware, this case was submitted to the jury on a single cause of action as to each Plaintiff: violation of procedural due process. A Judgment on the jury verdict in the total amount of $2,277,688.00 was entered against Defendant Judge Linda. The Defendant filed motions for Judgment as a Matter of Law and for New Trial, which are currently pending before this Court. Plaintiffs have filed a Motion for Attorney Fees, Costs and Interests. Defendant submits this Response to the Plaintiffs' motion.

## **ARGUMENT**

### A. **Reasonable Attorney Fee**

Section 1988 states in pertinent part that "[i]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, *a reasonable attorney's fee* as part of the costs." (Emphasis added). Under the current posture of this case, the Defendant does not dispute that Plaintiffs are entitled to attorney fees under 42 U.S.C. § 1988, as prevailing parties in a claim asserted through 42 U.S.C. § 1983.

The issue in the motion filed by Plaintiffs is the appropriate amount that the Court should approve as a "reasonable" attorney fee. Based on existing United States Supreme Court precedent the amount requested by Plaintiffs is grossly excessive. With all due respect to the lower federal courts, the Supreme Court's precedents on the issue of what constitutes a "reasonable" attorney fee in civil rights cases have been largely forgotten or ignored. Plaintiffs' attorneys, when seeking fees under § 1988 treat the fees as if they belonged to the attorney, and

2

not to the plaintiff. They also seem to have adopted an approach that they are entitled to large hourly rates because some practitioners claim similar rates. This approach is not contemplated by the statute nor condoned by Supreme Court precedent.

Congress enacted 42 U.S.C. § 1988 in order to ensure that federal rights are adequately enforced. *Perdue v. Kenny A. ex rel. Winn*, ____ U.S. ____, 130 S. Ct. 1662, 1671, 176 L. Ed. 2d 494 (2010). This is done by allowing the prevailing party to recover a "reasonable attorney fee." A "reasonable" fee is a fee that is sufficient to induce a *capable attorney* to undertake the representation of a meritorious civil rights case. See *Delaware Valley I,* 478 U.S., at 565 ("[I]f plaintiffs ... find it possible to engage a lawyer based on the statutory assurance that he will be paid a 'reasonable fee,' the purpose behind the fee-shifting statute has been satisfied"); *Blum* [*v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)] *supra,* at 897 ("[A] reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys" (ellipsis, brackets, and internal quotation marks omitted)). Section 1988's aim is to enforce the covered civil rights statutes, not to provide "a form of economic relief to improve the financial lot of attorneys." *Delaware Valley I, supra,* at 565. "Plaintiffs' attorneys in the instant matter should be remunerated at hourly rates 'not exceed[ing] the market rates necessary to encourage competent lawyers to undertake the representation in question.' *Coulter v. State of Tennessee,* 805 F.2d 146 (6th Cir.1986)." *Reed v. Rhodes*, 179 F.3d 453, 469 (6th Cir. 1999).

The Supreme Court has made clear that "[s]ection 1988 makes the prevailing *party* eligible for a discretionary award of attorney's fees. *Evans v. Jeff D.,* 475 U.S. 717, 730, 106 S.Ct. 1531, 1538, 89 L.Ed.2d 747 (1986)." *Venegas v. Mitchell*, 495 U.S. 82, 87, 110 S. Ct. 1679, 109 L. Ed. 2d 74 (1990). Since it is the party, rather than the attorney, who is eligible to

3

receive the attorney fee, the Supreme Court has consistently held "that fees may be awarded under § 1988 even to those plaintiffs who did not need them to maintain their litigation, either because they were fortunate enough to be able to retain counsel on a fee-paying basis, *Blanchard v. Bergeron, supra,* at 94-95, or because they were represented free of charge by nonprofit legal aid organizations, *Blum v. Stenson, supra,* 465 U.S. at 894-895." *Venegas v. Mitchell*, 495 U.S. 82 – 83. Thus, statutory awards of fees can coexist with private fee arrangements. *Id.*

In *Venegas*, the Supreme Court held that § 1988 did not preclude a plaintiff from entering into a contingent fee agreement with his attorney. "If § 1983 plaintiffs may waive their causes of action entirely, there is little reason to believe that they may not assign part of their recovery to an attorney if they believe that the contingency arrangement will increase their likelihood of recovery. *Id*. at 88. The Supreme Court further held that the plaintiff was bound by the terms of a contractual agreement made with his attorney, even though that agreement required him to pay more than the "reasonable" attorney fee that could be recovered under § 1988:

> Venegas also argues that because Congress provided for a reasonable fee to be paid by the defendant so that "a plaintiff's recovery will not be reduced by what he must pay his counsel," *Blanchard, supra,* 489 U.S., at 94, 109 S.Ct., at 944, the plaintiff should be protected from paying the attorney any more than the reasonable fee awarded by the trial court. Otherwise, Venegas contends, paying the contingent fee in full would greatly reduce his recovery and would impose a cost on him for enforcing the civil rights laws, a cost that the defendant should pay. This argument, too, is wide of the mark. *Blanchard* also noted that "[p]laintiffs who can afford to hire their own lawyers, as well as impecunious litigants, may take advantage" of § 1988. *Ibid.* Civil rights plaintiffs, if they prevail, will be entitled to an attorney's fee that Congress anticipated would enable them to secure reasonably competent counsel. If they take advantage of the system as Congress established it, they will avoid having their recovery reduced by contingent-fee agreements. But neither *Blanchard* nor any other of our cases has indicated that § 1988, by its own force, protects plaintiffs from having to pay what they have contracted to pay, even though their contractual liability is greater than the statutory award that they may collect from losing opponents. Indeed, depriving plaintiffs of the option of promising to pay more than the statutory fee if that is necessary to secure counsel of their choice would not further § 1988's

4

>general purpose of enabling such plaintiffs in civil rights cases to secure competent counsel.

*Venegas,* 495 U.S. at 89-90. This holding cuts both ways. Even though the Plaintiffs have entered into a contingency agreement with their attorneys in this case (Plaintiffs' Brief, p. 14), they are still entitled to recover only a "reasonable" attorney fee. Because Plaintiffs agreed to pay their attorney a fixed percentage of their recovery, that fact must be considered when determining what is a "reasonable" fee. ("If they take advantage of the system as Congress established it, they will avoid having their recovery reduced by contingent-fee agreements." *Id*.) Thus the contractual arrangement created between Plaintiffs and their attorneys has already assured that Plaintiffs' attorneys will receive a "reasonable" attorney fee. Indeed, just based on the contingency amount (assuming a one-third contingent fee) Plaintiffs' attorneys will be compensated at a rate of $629.02/hour. (Judgment of $2,277,688.00 divided by 3 = $759,229.00 – the amount due under the contingency agreement. $759,229.00 divided by 1,207 – the number of total attorney hours contained in Plaintiffs' Fee Petition = $629.02).

Just as the Supreme Court in *Venegas* could not ignore the contingent fee agreement when determining a "reasonable" attorney fee, so too this Court cannot ignore the contingent fee agreement when determining a "reasonable" attorney fee. It must be kept foremost in mind that the purpose of § 1988 is to allow civil rights plaintiffs to attract *competent* counsel. "The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel *yet which avoids producing a windfall for lawyers*." *Reed v. Rhodes, supra,* 179 F.3d at 471. (Emphasis added). The attorney fee requested by Plaintiffs in this case, if allowed, would result in a massive windfall for Plaintiffs' attorneys. Such a result does not further the purpose of § 1988, but rather frustrates the statute's purpose. The Supreme Court recently observed in *Perdue v. Kenny A. ex rel. Winn*, *supra*, 130 S. Ct. at

1676-1677, there are other public policy considerations at work when determining a "reasonable" attorney fee:

> Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights. But unjustified enhancements that serve only to enrich attorneys are not consistent with the statute's aim.[8] In many cases, attorney's fees awarded under § 1988 are not paid by the individuals responsible for the constitutional or statutory violations on which the judgment is based. Instead, the fees are paid in effect by state and local taxpayers, and because state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services. Cf. *Horne v. Flores,* 557 U.S. ——, ——, 129 S.Ct. 2579, 2593–2594, 174 L.Ed.2d 406 (2009) (payment of money pursuant to a federal-court order diverts funds from other state or local programs).

In *Perdue,* the Supreme Court reversed an enhancement of a fee award under § 1988 because "the effect of the enhancement was to increase the top rate for the attorneys to more than $866 per hour, and the District Court did not point to anything in the record that shows that this is an appropriate figure for the relevant market." 130 S. Ct. at 1675-1676. Here, the Plaintiffs' attorneys will already receive over $600.00/hr. That amount will increase based upon the attorney fee the Court ultimately determines is appropriate. That fact must guide the Court's decision in determining what constitutes a reasonable attorney fee in this case.

Plaintiffs have requested $450.00/hour for Ms. Gordon's time. Ms. Gordon has submitted time records reflecting 468 hours of time on this case. Thus, Plaintiffs request $210,600.00 in attorney fees for her time.

Plaintiffs have requested $300.00/hour for Ms. Prescott's time. Time records have been submitted reflecting 414.5 hours of time expended by Ms. Prescott on this case. Thus, Plaintiffs request $124,350.00 in attorney fees for her time.

Plaintiffs have requested $300.00/hour for Ms. Laughbaum's time. Time records have been submitted reflecting 36.7 hours of time expended by Ms. Laughbaum on this case. Thus, Plaintiffs request $11,010.00 in attorney fees for her time.

Plaintiffs have requested $225.00/hour for Ms. Dolente's time. Time records have been submitted reflecting 31.8 hours of time expended by Ms. Dolente on this case. Thus, Plaintiffs request $7,155.00 in attorney fees for her time.

Plaintiffs have requested $250.00/hour for Ms. Sande's time. Time records have been submitted reflecting 43.5 hours of time expended by Ms. Sande on this case. Thus, Plaintiffs request $10,875.00 in attorney fees for her time.

Plaintiffs have requested $250.00/hour for Ms. Pollick's time. Time records have been submitted reflecting 172 hours of time expended by Ms. Pollick on this case. Thus, Plaintiffs request $43,000.00 in attorney fees for her time.

Plaintiffs have requested $150.00/hour for Ms. Giffen's time. Time records have been submitted reflecting 40.3 hours of time expended by Ms. Giffen on this case. Thus, Plaintiffs request $6,045.00 in attorney fees for her time.

In total, Plaintiffs seek $413,035.00 in attorney fees for the actual time reflected in the time records submitted to the Court. When that amount is added to the judgment amount of $2,277,688.00, Plaintiffs would have a total recovery of $2,690,723.00.[1] Based on a contingency agreement of one third, Plaintiffs' attorneys will receive $896,907.66 as a fee. Based on the 1,207 hours submitted to the Court in Plaintiffs' motion, Plaintiffs' attorneys would receive $743.08/hour. That amount cannot be justified as a "reasonable" amount for attorney fees.

"The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing

---

[1] Defendant does not include Plaintiffs' claims for interest or costs in this amount.

7

a windfall for lawyers." *Reed v. Rhodes, supra,* 179 F.3d at 471 Or, as the Fifth Circuit put it in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 719 (5th Cir. 1974), "courts must remember that they do not have a mandate ... to make the prevailing counsel rich." *Reed v. Rhodes*, 179 F.3d at 472. "The party seeking attorneys fees bears the burden of documenting his entitlement to the award. *See Webb v. Dyer County Bd. of Educ.,* 471 U.S. 234, 242, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985)." *Reed v. Rhodes*, *supra*, at 472. The party applying for an award of fees must "exercise 'billing judgment' with respect to hours worked." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 552 (6th Cir. 2008). That is, any hours expended that were not absolutely necessary may not be included in the attorney fees award. As the court observed in *King World Productions, Inc. v. Financial News Network, Inc.,* 674 F.Supp. 438, 440 (S.D.N.Y.1987), "[w]hile parties to a litigation may fashion it according to their purse and indulge themselves and their attorneys ... they may not foist these extravagances upon their unsuccessful adversaries." (*quoting Farmer v. Arabian American Oil Company,* 31 F.R.D. 191, 193 (S.D.N.Y.1963)).

The Supreme Court cases of *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and *Pennsylvania v. Del. Valley Citizens Council for Clean Air,* 478 U.S. 546, 564, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (*Delaware Valley I*), are the starting points for an analysis of determining a reasonable attorney fee issue under 42 U.S.C. § 1988. The Supreme Court has stated, and reiterated, that the touchstone for determining the amount of a *reasonable* attorney fee is the "lodestar" amount, which is calculated by multiplying the number of hours reasonably expended on the litigation by a *reasonable* hourly rate. *Hensley,* 461 U.S. at 433. The lodestar looks to "the prevailing market rates in the relevant community." *Perdue v. Kenny A. ex rel. Winn*, *supra*, 130 S. Ct. at 1672. The lodestar is presumed to be the reasonable fee to which

8

counsel is entitled. *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 551-52 (6th Cir. 2008).

The Plaintiffs have submitted the 2010 "Economics of Law Practice in Michigan" as Exhibit J to their motion. Page 12 of Exhibit J shows that the median billing rate for private practitioners in Civil Rights is $230.00/hour. Since the attorney fee component of § 1988 is designed to allow a civil rights plaintiff to attract "competent" counsel by requiring the defendant to pay a "reasonable" attorney fee in the event the plaintiff prevails, $230.00/hour is more than adequate to compensate the Plaintiffs for Ms. Gordon, Ms. Prescott and Ms. Laughbaum's time. The 25th percentile rate of $175.00/hour is a "reasonable" rate for Ms. Pollick, Ms. Dolente and Ms. Sande. The Defendant agrees that $150.00/hour is a reasonable rate for Ms. Giffen's time.

The affidavits submitted by Plaintiffs do not change this analysis. The purpose of § 1988 is to encourage competent attorneys to represent civil rights plaintiffs. The difficulty with assigning an hourly rate to Plaintiffs' counsel in this case, is that they do not bill for hourly work. Thus, it is impossible for the Court to determine what Plaintiffs' counsel would charge in an hourly billing case. This fact has been acknowledged by Ms. Gordon in a newspaper article posted on the firm's website:

> She also takes cases only on contingency – meaning she never charges by the hour. Her pay comes from her cut of verdict awards, typically a third. Should she lose? She gets nothing.
>
> "It gives me a lot more freedom," she said. "I don't want anybody to pay me by the hour."

http://www.deborahgordonlaw.com/Practice-Areas/Media-Coverage (Attached as Exhibit A). The Court must not indulge Plaintiffs' legal fiction that it is necessary to compensate them in the amount of $400.00/hour in order to secure the services of Ms. Gordon and her firm. The purpose of the "relevant market" rate in determining reasonable attorney fees is to reflect what the

9

attorney who accepts the case would surrender in other fees. Here, the answer is nothing. Ms. Gordon does not take other types of cases, nor does she have other fee arrangements. Based on Ms. Gordon's agreement with the Plaintiffs, her firm is already receiving over $600.00/hour for the time expended on this case. Awarding Plaintiffs anything more than the median amount of civil rights practitioners as a reasonable attorney fee would result in a windfall for Plaintiffs' attorneys.

It should also be noted that Ms. Gordon's comments in Exhibit A reveal that she does not believe herself at risk of not receiving payment in any case she takes:

> Gordon's practice is so rarified that she turns down almost every case presented to her, selecting only the ones *that she is certain she can win*.

(Emphasis added). The Court cannot ignore the reality of a given situation. In this situation, awarding the Plaintiffs' the amount of attorney fees they seek would result in their attorneys receiving over $700.00/hour. Such a result cannot be allowed.

Plaintiffs also seek an enhancement of the attorney fees the Court awards. There is absolutely no basis for doing so. In *Perdue*, the Supreme Court has made clear that "there is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome *in those rare circumstances* in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue,* 130 S. Ct. at 1673. (Emphasis added). This is not one of those "rare" cases where an enhancement is justified.

Plaintiffs place great weight on the undesirability of this case as a basis for enhancement. Plaintiffs assert that suing a sitting judge is a great professional risk. Plaintiffs also assert that the contingent nature of the case and the need to turn away other potential clients justifies an

enhancement. Being charitable, the Plaintiffs' arguments on these points are disingenuous at best.

Ms. Gordon's own words refute the fact that it is risky for her to take contingency cases. Those are the only cases she takes, and she takes only those cases that she is certain she can win. (Exhibit A). The nature of Ms. Gordon's practice also refutes the argument that she has had to turn away potential clients in order to take this case. "Gordon's practice is so rarified that she turns down almost every case presented to her . . ." (Exhibit A). Finally, Ms. Gordon obviously does not view suing courts and judges as a professional risk in any way. She has done so on at least three occasions, suing the 48th District Court and the 28th District Court in addition to this case. Moreover, as stated in Exhibit A:

> "It might be said that attorney Deborah Gordon has an issue with authority figures.
>
> She sues them all the time."

The Supreme Court stated in *Perdue*, "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," *Delaware Valley I, supra,* at 566, and has held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation, see *Dague, supra,* at 562–563, 112 S.Ct. 2638; *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 726–727, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) *(Delaware Valley II)* (plurality opinion); *Blum,* 465 U.S., at 898, 104 S.Ct. 1541." *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. at 1673. Moreover, a fee applicant seeking an enhancement "must produce 'specific evidence' that supports the award. *Id.,* at 899, 901, 104 S.Ct. 1541 (An enhancement must be based on "evidence that enhancement was necessary to provide fair and reasonable compensation"). This requirement is essential if the lodestar method is to realize one

11

of its chief virtues, *i.e.,* providing a calculation that is objective and capable of being reviewed on appeal." *Id.*

Plaintiffs have come forward with absolutely no "specific evidence" entitling them to an enhancement of a reasonable attorney fee. The Plaintiffs' request for enhancement must be denied.

Once the lodestar analysis has been completed the Court must consider Plaintiff's relative "degree of success". The Court must analyze the "hours reasonable expended" in relationship to the degree of "success obtained". "Where the Plaintiff fails to obtain all that he reasonably could have asked for and achieves only partial or limited success, the lodestar amount . . . is likely to be excessive." Therefore, "a reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley, 461 U.S. at 440.* In this situation, the Court may either try to "identify specific hours that should be eliminated" or reduce the award "across the board" to account for the limited success. *Id. at 436-437.*

Plaintiffs who prevails on some, but not all of the legal theories or claims presented achieve only "partial success". Attorney's fees expended in the pursuit of <u>unsuccessful claims</u> are not compensable under the lodestar method. The Supreme Court in Hensley explained:

> "In some cases a Plaintiff may present in one lawsuit distinct claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants . . . counsels work on one claim will be unrelated to his work on another claim. Accordingly, <u>work on the unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved</u>." . . . The Congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as though they had been raised in separate lawsuits, and therefore no fee maybe awarded for services un the unsuccessful claim. *Hensley, 461 U.S. at 434-35.* (emphasis added)

The prevailing party bears the burden of establishing the appropriateness of its fee request. *Hensley, 461 U.S. at 433*. The prevailing party is required to "maintain billing records in a manner that will enable a reviewing Court to identify distinct claims". *Hensley, 461 U.S. at 437*. The Court may "either try to identify specific hours that should be eliminated or reduce the award across the board to account for the limited success." *Hensley, 461 U.S. at 436-437*. Without detailed or comprehensive records, District Courts are left to make decisions on the reasonableness of requested fees based on general accounting of the hours spent. "Where the records does not permit the Court to ascertain the exact number of hours attributable to non-meritorious claims, the Court may rely on its best judgment and familiarity with the case". *Orshan v McChiarola*, 629 Fed. Supp. 1014 (E. D. New York 1986).

In the present litigation Plaintiffs filed multiple claims based on multiple legal theories. Plaintiffs alleged an "Implied Contract Claim" and State "Tort Claims" based on Tortuous Interference with a Business Expectancy, Defamation, and Wrongful Termination in Violation of Public Policy. Plaintiffs initiated Constitutional Claims for First Amendment Retaliation and Fourteenth Amendment Due Process. Plaintiffs' State Claims were dismissed without prejudice (after being litigated through the discovery process). Plaintiff re-filed these claims in State Court. The State Court dismissed these claims and the dismissal was upheld on appeal. Plaintiffs' Constitutional Claims were dismissed with prejudice following Defendants Motion for Summary Judgment. Plaintiff appealed and the Due Process Claim alone was remanded.

Plaintiff counsel's billing records are not maintained in a manner which will allow this Court or the Defendant to identify the "distinct claims" for which attorney fees were incurred. The billings do not identify the <u>issues</u> or <u>claims</u> researched or briefed. They do not identify the <u>issues</u> or <u>claims</u> which are communicated nor strategized about and between counsel. In the

13

absence of these specific contemporaneous billing records, the Court, based on its knowledge of the case, may make an "across the board" reduction to Plaintiffs' fee request. *Hensley, 461 U.S. at 436-437.* Here, Defendants request an across the board reduction awarding Plaintiff one thirteenth of their requested fees (based on the 6 claims filed herein and 7 claims filed in State Court all of which were dismissed).

Plaintiffs' relative success may also be determined by comparing "the amount of damages awarded to the amount of damages requested, qualitatively evaluating the relief in comparison to the litigation as a whole". *Hensley, 461 U.S. at 440.* Here, there three Plaintiffs. Each Plaintiff sought lost wages for back and future pay. Each Plaintiff sought non-economic damages and punitive damages. Plaintiffs' counsel blackboarded more than six million dollars in total damages. The Jury awarded $2.2 million dollars in total damages. Although Plaintiffs are considered a "prevailing party" the degree of their success is limited by the fact that the Jury awarded one third of the damages requested.

Finally, the Supreme Court requires counsel for a prevailing Civil Rights party seeking an award of attorney fees to exercise "billing judgment" in their request. Counsel are expected to make a good faith effort to exclude hours that are excessive, redundant or otherwise unnecessary. "Hours that are not properly billed to one's client are also not properly billed to one's adversary pursuant to statutory authority. Further the Supreme Court requires "detailed contemporaneous billings", The failure to bill contemporaneously is itself reason to reduce fees across the board. *Hensley 461 U.S. at 437.*

Here, the billing records provided by Plaintiffs counsel, Deborah Gordon and her associates evidence significant redundancy and duplication of effort. The bills are replete will multiple internal communications between counsel. Whenever one attorney prepares a

14

communication, another attorney reviews and responds to it. As a result the client is billed multiple times for every incoming and internal communication. Likewise, the attorneys bill for each email sent and telephone communication between themselves. As a result every task is billed by lead counsel and an associate or multiple associates. This form of redundant billing constitutes a duplication of effort, which is not properly billed or recovered herein. These redundancies and the duplicative hours as well as the "Administrative (non-attorney) functions being performed are set forth-in Defendants Exhibit B. Plaintiffs' billing records also demonstrate that multiple attorneys are performing the same task at the same time (appearance at deposition, motion argument, and/or trial). These duplicative, multiple billings are also identified in Defendant's Exhibit B. Finally, Plaintiffs counsel expended more than $16,000.00 preparing this Motion for Fees and Costs. The preparation time demonstrates that Plaintiffs counsel did not maintain contemporaneous records warranting further reduction of this fee request.

### B. Prejudgment Interest

Plaintiffs seek prejudgment interest on the entire amount of the judgment. Plaintiffs are clearly not entitled to prejudgment interest on the entire judgment. The authority cited by Plaintiffs does not stand for the propositions for which Plaintiffs offer them.

Plaintiffs cite *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 841-42 (6th Cir. 1994), for the proposition that prejudgment interest is a component of complete compensation. That is not an accurate reading of *Wilson*. In addressing a claim for prejudgment interest on an award of back pay in a Title VII case. The Sixth Circuit stated:

> A district court's award of prejudgment interest is reviewed for an abuse of discretion. *United States v. Crescent Amusement Co.,* 323 U.S. 173, 185, 65 S.Ct. 254, 260, 89 L.Ed. 160 (1944). An award of "prejudgment interest ... is an element of complete compensation" in a Title VII back pay award. *Loeffler v. Frank,* 486 U.S. 549, 558, 108 S.Ct. 1965, 1971, 100 L.Ed.2d 549 (1988) (citations omitted). Prejudgment interest helps to make victims of discrimination

15

whole and compensates them for the true cost of money damages they incurred. *West Virginia v. United States,* 479 U.S. 305, 310, 107 S.Ct. 702, 706, 93 L.Ed.2d 639 (1987). This court commonly awards prejudgment interest on back pay awards. *See EEOC v. Wooster Brush Co.,* 727 F.2d 566, 578 (6th Cir.1984) (prejudgment interest added to "back pay awards [has] become reasonably common").

The Court cited *Loeffler v. Frank,* 486 U.S. 549, 558, 108 S.Ct. 1965, 1971, 100 L.Ed.2d 549 (1988), for the statement that prejudgment interest is an element of complete compensation. The Supreme Court in *Loeffler* held that the Postal Service was responsible for prejudgment interest on a back pay award in a Title VII case:

> Prejudgment interest, of course, is "an element of complete compensation." *West Virginia v. United States,* 479 U.S. 305, 310, 107 S.Ct. 702, 706, 93 L.Ed.2d 639 (1987). Thus, since Title VII authorizes interest awards as a normal incident of suits against private parties, and since Congress has waived the Postal Service's immunity from such awards, it follows that respondent may be subjected to an interest award in this case.

*Loeffler v. Frank*, 486 U.S. at 558. *Loeffler's* citation of *West Virginia v. United States,* 479 U.S. 305, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987), is also instructive. In that case the Supreme Court held that a State was responsible for paying prejudgment interest to the United States for breach of a commercial contract: "This federal interest in complete compensation is likely to be present in any ordinary commercial contractual arrangement between a State and the Federal Government." *Id. at* 305.

The gist of the holdings on prejudgment interest is that a prevailing plaintiff is eleigible for prejudgment interest on a back pay award *only*. Although Defendant could locate no Sixth Circuit or Michigan Federal District Court opinions on point, all other federal courts that have addressed the issue have rejected claims for prejudgment interest on non-economic damages or punitive damages. The court in *Rush v. Scott Specialty Gases, Inc.*, 940 F. Supp. 814, 817 (E.D. Pa. 1996), cogently explained the rationale for this rule:

16

> Moreover, if the purpose of awarding prejudgment interest is to compensate a plaintiff for the loss of use of money that she would otherwise have earned, it is entirely consistent with this purpose not to award interest on money that she would have earned in the future (front pay) or would never have earned but for the jury verdict (punitive and pain and suffering damages). Again, we find persuasive the cases Defendant cites concerning front pay, *see Scarfo v. Cabletron Sys., Inc.,* 54 F.3d 931, 961 (1st Cir.1995) (reasoning that "[i]nterest is ordinarily awarded to compensate for the lost use of funds. Since the front pay awards represent damages for wages the plaintiff would have received in the future, after the date of judgment, the plaintiffs had not lost the use of these funds before the judgment was ordered"), and punitive damages, *see Wickham Contracting v. Local Union No. 3,* 955 F.2d 831, 834 (2d Cir.) (holding that pre-judgment interest should not be granted "if the statutory obligation on which interest is sought is punitive in nature")

This same rationale has been applied by courts in rejecting claims for prejudgment interest on any awards aside form back pay. See, *Madison v. IBP, Inc.*, 149 F. Supp. 2d 730, 782 (S.D. Iowa 1999) *aff'd in part, vacated in part,* 257 F.3d 780 (8th Cir. 2001) *cert. granted, judgment vacated,* 536 U.S. 919, 122 S. Ct. 2583, 153 L. Ed. 2d 773 (2002) and *abrogated by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004) ("Federal courts have been "concerned that prejudgment interest not be awarded where punitive damages are at issue, lest a double penalty be inflicted or the maximum penalty be exceeded." *Board of Gov. of Fed. Reserve Sys. v. Pharaon,* 169 F.3d 110, 115–16 (2d Cir.1999) (citing *Rodgers v. United States,* 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3 (1947)); *cf. Wickham Contracting v. Local Union No. 3, IBEW,* 955 F.2d 831, 834 (2d Cir.1992)"); *Cioffi v. New York Cmty. Bank*, 465 F. Supp. 2d 202, 222-23 (E.D.N.Y. 2006) ("Unlike compensatory damages, punitive damages are not intended to compensate for her injuries or damages; they are designed to punish the defendant. *See State Farm Automobile Insur. Co. v. Campbell,* 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003); *Cush-Crawford v. Adchem Corp.,* 271 F.3d 352, 359 (2d Cir.2001)"); *Arbaugh v. Y & H Corp.*, 444 F. Supp. 2d 693, 697 (E.D. La. 2006) ("Arbaugh contends that pre-judgment interest is an integral part of the 'make-whole' remedial scheme of employment discrimination cases. *See Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 1970-71,

17

100 L.Ed.2d 549 (1988). She urges that post-judgment interest is mandated by 28 U.S.C. § 1961(a). Y & H responds that pre-judgment interest is discretionary on the back pay award. It urges that there should be no pre-judgment interest on the award of damages for emotional distress and the award of punitive damages. The Court agrees that pre-judgment interest on the back pay is required to make plaintiff whole. Such interest is not appropriate on the remaining elements of the judgment.").

At most, Plaintiffs may be eligible to receive prejudgment on an award of back pay. However, since the Plaintiffs did not request the jury determine back pay and front pay separately, but only requested a general category of "economic damages," it is not possible to determine the amount of back pay awarded. Thus, Plaintiffs' request for prejudgment interest should be denied in its entirety.

### C.     Port-Judgment Interest

Defendant agrees that the award of post-judgment interest is mandatory under 28 U.S.C. § 1961(a).

Respectfully Submitted,


**CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.**

By:  /s/ Timothy S. Ferrand
TIMOTHY S. FERRAND (P 39583)
Attorney for Defendant Judge Davis, only
43409 Schoenherr Road
Sterling Heights, Michigan  48313
Phone:  (586) 731-5000

**PLUNKETT COONEY**

BY:  s/Peter W. Peacock
MICHAEL S. BOGREN (P34835)
PETER W. PEACOCK (P37201)
Attorneys for Defendant
10 S. Main, Suite 400
Mt. Clemens, MI  48043
Email: mbogren@plunkettcooney.com
Email: ppeacock@plunkettcooney.com
Telephone: (269) 226-8822
Telephone: (586) 466-7605

Dated: April 2, 2012

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to attorneys of record and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: [none]

**CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.**

By: /s/ Timothy S. Ferrand
TIMOTHY S. FERRAND (P 39583)
Attorney for Judge Davis
43409 Schoenherr Road
Sterling Heights, Michigan  48313
Phone:  (586) 731-5000
tferrand@cmda-law.com