## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NANCY ENGLAR, et al.,

                     Plaintiffs,

vs.

CHIEF JUDGE LINDA DAVIS
*of the 41B District Court, individually and in
her official capacity.*

                    Defendant.

_____/

Civil Action No.
04-CV-73977, 04-CV-73957

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER
## (1) DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW (Dkt. No. 169);
## (2) DENYING DEFENDANT'S MOTION FOR NEW TRIAL (Dkt. No. 171), and
## (3) DENYING JUDGMENT IN FAVOR OF DEFENDANT CHIEF JUDGE LINDA DAVIS

This matter was tried to a jury, which rendered a verdict in favor of the Plaintiffs against

Defendant Chief Judge Linda Davis. Now before the Court are Defendant's Motion for

Judgment As a Matter of Law, and Motion for New Trial or to Amend the Judgment Regarding

Damages, both filed on February 24, 2012. (Dkt. Nos. 169 and 171.) Plaintiffs filed Responses

to both motions on April 2, 2012. (Dkt. Nos. 183 and 184.) Defendant filed Replies on April 16,

2012. (Dkt. Nos. 187 and 189.) The Court held a hearing on August 23, 2012. For the reasons

stated below, the Court will:

    (1) DENY Defendant's Motion for Judgment As a Matter of Law;

    (2) DENY Defendant's Motion for New Trial; and

    (3) DENY Defendant's request to enter judgment in favor of Defendant Chief Judge

Linda Davis.

Defendant's Motion to Amend the Judgment Regarding Damages will be decided subsequently.

## I. PRELUDE

The United States Court of Appeals for the Sixth Circuit has recently noted:

> We must respect the jury's verdict unless "no reasonable juror could have found" for Quicken. *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009). "A court may grant judgment as a matter of law only when there is a complete absence of fact to support the verdict" and "may grant a new trial only when a jury has reached a seriously erroneous result." *Id.*

*Henry v. Quicken Loans, Inc.*, — F.3d —, 2012 WL 5259000, at *2 (6th Cir. Oct. 25, 2012).

## II. BACKGROUND

The initial issue for determination by the jury was whether these public employee Plaintiffs were employed by the 41B District Court under a contract or clear understanding that they could only be terminated for just cause.

The jury, after hearing extensive testimony and receiving exhibits, concluded (1) that all three Plaintiffs were just cause employees, (2) were terminated by Defendant Chief Judge Linda Davis without receiving procedural due process, and (3) were entitled to recover damages under Title 42 U.S.C. § 1983.

### A. Procedural History

The relevant procedural history in this matter was summarized in this Court's prior Opinion and Order Denying Defendant's Motion to Stay Pending Appeal, entered on July 15, 2011 (Dkt. No. 107):

This case was originally filed in 2004 against Defendants 41B

2

District Court, the Charter Township of Clinton, and Chief Judge Linda Davis. On September 22, 2006, the Court granted Defendants' Motion for Summary Judgment. (Dkt. No. 71.) Plaintiffs filed an appeal, and the Sixth Circuit reversed this Court's grant of summary judgment to Defendants. *Barachkov v. 41B Dist. Court*, 311 Fed. Appx. 863 (6th Cir. 2009).

The Sixth Circuit specifically found a question of fact regarding whether Plaintiffs were "at will" or "just cause" employees. The Sixth Circuit opinion stated as follows:

> Thus, there exists a direct conflict in the evidence regarding the exact contours of the termination policy – if any existed – employed by Judge Cannon, *and whether such a policy was ever communicated to, and understood by, all of his employees*. This is a genuine issue of material fact which requires further development of the record and cannot be properly resolved on summary judgment. As such, the district court erred in dismissing Appellants' procedural due process claims.

*Id.* at 872 (emphasis added).

In 2010, the Sixth Circuit issued a significant decision regarding sovereign immunity, *Pucci v. Nineteenth District Court*, 628 F.3d 752 (6th Cir. 2010). After *Pucci*, on December 21, 2010, the Court held a status conference regarding the possible dismissal of Defendants 41B District Court and the Charter Township of Clinton based on sovereign immunity. At this status conference, counsel for Defendant Linda Davis argued that the claims against her were also barred by qualified immunity. (Dec. 21, 2010 Hr'g Tr. 9-21) (Dkt. No. 86.)

The Court requested additional briefing on the arguments raised by defense counsel. On April 14, 2011, the Court issued an Order finding that Plaintiffs can (1) raise claims against Defendant Davis in her personal capacity, and (2) seek prospective injunctive relief against Defendant Davis or her successor in her official capacity. (Dkt. No. 84.) Defendant filed a Motion for Reconsideration (Dkt. No. 88), which the Court denied on May 9, 2011 (Dkt. No. 89).

3

(July 15, 2011 Op. and Order 1-2.)

On June 8, 2011, Defendant filed an interlocutory appeal of the Court's May 9, 2011 Order, but then voluntarily dismissed the appeal on August 8, 2011. (Dkt. No. 108.) Thereafter, on October 18, 2011, the United States Court of Appeals for the Sixth Circuit found that it lacked jurisdiction over Defendant's appeal as it related to a question of fact regarding qualified immunity. (Dkt. No. 114.)

The case proceeded to a jury trial, which began on January 4, 2012. On January 27, 2012, the jury returned a verdict against Defendant and in favor of all three Plaintiffs, and awarded the three Plaintiffs total damages of $2,277,688. (Jury Verdict Form, Dkt. No. 149.)

Defendant timely moved for judgment as a matter of law at trial, and has now renewed her motion pursuant to Fed. R. Civ. P. 50(b).[1] Now before the Court are Defendant's Motion for Judgment As a Matter of Law, and Motion for New Trial or to Amend the Judgment Regarding Damages.

## B. Factual History

The factual record established at trial supersedes the fact record that existed at the time of summary judgment. *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 545 (6th Cir. 2012). Nevertheless, the Sixth Circuit's prior-to-trial Opinion and Order contained an accurate and concise summary of many undisputed facts in this case:

> [The] 41B District Court is a Michigan trial court assigned

---

[1]"In the context of a jury trial, the Federal Rules of Civil Procedure tell parties to speak up at two times if they want the court to resolve the claim as a matter of law. They must move for judgment as a matter of law before the claim goes to the jury, *see* Fed. R. Civ. P. 50(a), and they must renew the motion (or seek a new trial) after the jury issues its verdict, *see* Fed. R. Civ. P. 50(b); Fed. R. Civ. P. 59." *Maxwell v. Dodd*, 662 F.3d 418, 420-21 (6th Cir. 2011).

jurisdiction over traffic violations, civil and criminal infractions, small claims, and probation oversight. At times relevant to this case, 41B District Court was comprised of two physically separate divisions, one serving the city of Mt. Clemens, and the other serving Clinton Township. Each municipality was responsible for maintaining, financing and operating its respective division of the court.

[Plaintiffs] were employees of the Clinton Township division of the court until their terminations in July, 2004. [Plaintiffs] Barachkov and Englar were employed as court clerks, while [Plaintiff] Diehl was a court cashier. During [Plaintiffs'] employment, Linda Davis was Chief Judge of the 41B District Court and was assigned supervisory authority over personnel in both locations by law, and possessed the authority to hire, fire, discipline, or discharge employees. Chief Judge Davis and Judge John Foster sat in the Mt. Clemens location, while Judge William Cannon sat in Clinton Township.

In late May 2004, Deborah Green, a representative of the [State Court Administrative Office ("SCAO")], informed Chief Judge Davis that the SCAO would soon be conducting a management oversight review into the operations and performance of the 41B District Court. On June 28, 2004, Chief Judge Davis held a staff meeting in which she advised the district court staff that, as part of the SCAO investigation, each employee of the court would be interviewed. At this meeting, Chief Judge Davis emphasized the serious nature of the investigation and that the need for honesty was paramount. She informed the employees that no one would be disciplined for previous wrongs, and that no one would lose their jobs if they were honest with the interviewer.

Green independently interviewed each court employee; Chief Judge Davis did not participate in the investigation. Following completion of the interviews, Green concluded that [Plaintiffs] Barachkov, Diehl, and Englar had lied and withheld information, and had coerced others to do the same. [Plaintiffs] allege that their answers to Green's questions were honest and that Green asked questions about topics on which they had no personal knowledge.

On July 15, 2004, Chief Judge Davis fired the [Plaintiffs]. Along with a representative of the SCAO, Chief Judge Davis met individually with each [Plaintiff] and informed her that she was

> being terminated due to her responses during the interview.
> [Plaintiffs] were not provided with advance notice of the
> terminations or a hearing in which they could dispute the reasons
> for their dismissal. [Plaintiffs] contend that their terminations were
> a result of Chief Judge Davis' desire to advance her political and
> personal agenda by forcing Judge Cannon to retire, and that they
> were fired for failing to provide false information about Judge
> Cannon's management of the Clinton Township division of the
> 41B District Court.

*Barachkov*, 311 Fed. Appx. at 865-66.

One of the principal contested issues at trial was whether Plaintiffs were at-will or just-cause employees of the 41B District Court location in Clinton Township, at which Judge Cannon presided. Judge Cannon's employees were not Clinton Township employees, and accordingly were not covered by the Clinton Township "just cause" standard. Thus, while Chief Judge Davis' court employees, located in Mt. Clemens, were unionized and worked under a "just cause" termination policy, Judge William Cannon, who sat in the Clinton Township Division of the 41B District Court, was permitted to implement his own court personnel policies regarding his non-unionized staff in the Clinton Township location. The issue boiled down to whether Judge Cannon had implemented and communicated the "just cause" standard. Plaintiffs argued that Judge Cannon implemented a just-cause policy, while Defendants contended that Judge Cannon had no formal policy, did not provide his staff with any papers denoting a just cause policy, and effectively treated his staff as at-will employees.

At trial, Plaintiffs contended that Judge Cannon had adopted the Clinton Township just-cause employment policy set forth in the Township's published "Disciplinary Action Procedure" ("DAP"). Plaintiffs also relied upon Judge Cannon's deposition testimony:

> Q    Okay. Paragraph 8 provides: As a supervisor, my policy
> and practice was to generally provide for notice,

| | | progressive discipline and good cause for termination.  Do you see that? |
|---|---|---|
| | A | Yes. |
| | Q | You're talking about the way that you handled things when you were District Court Judge at the 41B District Court, correct? |
| | A | Correct. |
| | Q | And you're saying that this is the way you practiced, yes? |
| | A | That was my policy, that's right. |

(Sur-Reply to Defs.' Mot. for Summ. J., Ex. B, Cannon Dep. 108–09 (Dkt. No. 54-3).)

On the other hand, Deborah Green, who conducted the investigation of the Clinton Township division of the 41B District Court on behalf of the SCAO, testified that during her interviews with every employee of the Clinton Township court, she asked for, but never received, a written employment policy from any court employee.

| | Q | Did anyone provide you a personnel policy? |
|---|---|---|
| | A | No. |
| | Q | Did anyone during the interview process refer you to a personnel policy adopted or applied by the court? |
| | A | Some employees made reference to things like, well, if there were any procedures, they would be at the township. But no, not specifically court policies. |
| | Q | Did you learn if those procedures at the township related to pay and benefits? |
| | A | Right.  That was the only thing anybody ever mentioned to us, was the time, leave time stuff. |
| | Q | Outside of those procedures relating to pay and benefits, I'm talking about personnel policies, did any employee refer you to a personnel policy relating to court employees? |
| | A | No. |
| | Q | Did anyone refer you to a handbook relating to court employees? |
| | A | No. |
| | Q | Did anyone describe to you or provide to you a copy of Clinton Township's disciplinary action procedure? |
| | A | No. |

(Jan. 9, 2012 Trial Tr. 154-55.)

Defendant Chief Judge Davis likewise testified at trial that she was not aware of any written just-cause employment policies at the Clinton Township location.

> Q    Isn't it true that when you said you'd never seen anything specific, you meant the court itself had never come up with any policy of its own, right?
> A    I have never seen anything that was provided by the court or the township that indicated those were court policies or procedures.
> Q    But you're well aware that under the administrative order that we introduced into evidence yesterday, a court doesn't need to come up with its own policy and procedure.  A court can simply rely on what already exists at the funding unit.  You know that, don't you?
> A    They can, but they're not required to do that.
> Q    Exactly.  So when you say you never saw any policy, you never saw an at-will policy, right?
> A    I never saw any policies or procedures.
> Q    Right.  But you've become aware, I assume, Deborah Green has told you that when she interviewed the employees, most everybody said they work under the Clinton Township personnel policies.  Did she tell you that?
> A    She may have said that.
> Q    Okay.
> A    That they thought that they worked under the personnel policies, meaning the financial.  There was never --
> Q    Okay.  Judge --
> A    There was never anything established that they followed personnel procedures there.

(Jan. 5, 2012 Trial Tr. 61-62.)

Defendant Chief Judge Davis also testified that she had discussed the personnel policies of the 41B District Court in Clinton Township with Judge Cannon, and based on those discussions concluded that those employees were at-will employees.  (*Id.* at 151.):

> A    I was told by Judge Cannon there were no policies.
> Q    Okay.  And when were you told that?
> A    During our meetings with them, during our merger of the court.  We asked for all documentations [sic], all contracts,

8

all procedures, and there were none.

(Jan. 4, 2012 Trial Tr. 83; *see also* Jan. 4, 2012 Trial Tr. 86.)

Defendant Chief Judge Davis did acknowledge in her testimony what the implications

would be of a "just cause" policy:

| | |
|---|---|
| Q | [U]nder a just-cause policy, typically the person is entitled to notice of any problems they have? |
| A | Yes. |
| Q | Or any charges against them? |
| A | Yes. |
| Q | And given an opportunity to respond? |
| A | Yes. |
| Q | And typically you go through steps of discipline to try to work with the person and correct, right? |
| A | Yes. |
| Q | Okay.  And that is exactly the policy that the employees in your building in Mt. Clemens worked under, correct? |
| A | Yes. |

(Jan. 4, 2012 Trial Tr. 67-68.)

### III.  LEGAL STANDARD

On reviewing a motion brought pursuant to Federal Rule of Civil Procedure 50(b), the

Court must give "substantial deference" to the jury's verdict.  *Radvansky v. City of Olmstead*

*Falls*, 496 F.3d 609, 614 (6th Cir. 2007); *see also Quicken Loans*, *supra* at 2.  The motion may

be granted "'only if in viewing the evidence in the light most favorable to the non-moving party,

there is no genuine issue of material fact for the jury, and reasonable minds could come to but

one conclusion, in favor of the moving party.'" *Radvansky*, 496 F.3d at 614 (quoting *Gray v.*

*Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001)).  The Court does not

"reweigh the evidence or assess the credibility of witnesses."  *Id*.

### IV.  ANALYSIS

9

Defendant Chief Judge Linda Davis contends (1) that the evidence presented at trial was insufficient to overcome the presumption of "at will" employment, and (2) that she is entitled to qualified immunity as a matter of law, because a reasonable official would have concluded that Plaintiffs were at-will employees, and because a reasonable official would have concluded that just cause existed to terminate Plaintiffs' employment.  The Court notes that Defendant's Rule 50(b) motion is treated as a renewal of her Rule 50(a) directed verdict motion, and may thus only be granted on grounds raised in the directed verdict motion.  *See Hometown Folks, LLC v. S & B Wilson, Inc.*, 643 F.3d 520, 527 (6th Cir. 2011).  In her directed verdict motion, Defendant presented her sufficiency of the evidence argument, *see* Jan. 20, 2012 Trial Tr. 28-32, and both of her qualified immunity arguments, *see* Jan. 20, 2012 Trial Tr. 32-35.  Accordingly, the Court finds that the arguments are properly raised in the instant Rule 50(b) motion.

## A.  Sufficiency of the Evidence

Defendant argues that no reasonable juror could have concluded that Plaintiffs were at-will employees.

Generally, Michigan law presumes that employment contracts are terminable at will unless otherwise expressed.  *See Lynas v. Maxwell Farms*, 279 Mich. 684 (1937).  However, Plaintiffs, who have no written employment contract, can rely on an exception to the general rule of "at will" employment by establishing that they had a legitimate expectation of just-cause employment.  *See Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 598-99 (1980); *Lytle v. Malady*, 458 Mich. 153, 164 (1998).  Here Plaintiffs claim they have a legitimate expectation of a just-cause termination policy based upon Judge Cannon's deposition testimony, and their own testimony.

10

In response, Defendant argues that Plaintiffs' legitimate expectation theory must fail because Plaintiffs failed to show that the policy was communicated to, and understood by, all of the 41B District Court employees.  *See Barachkov*, 311 Fed. Appx. at 872 (holding "[t]hus there exists a direct conflict in the evidence regarding the exact contours of the termination policy – if any existed – employed by Judge Cannon, *and whether such a policy was ever communicated to, and understood by, all of his employees*." (emphasis added)); *Rood v. General Dynamics Corp.*, 444 Mich. 107, 138 (1993) (noting that employer policy statements establishing just-cause employment under *Toussaint* must be "disseminated either 'to the work force in general or to specific classifications of the work force, rather than to an individual employee.'" (quoting *Bankey v. Storer Broadcasting Co.*, 432 Mich. 438, 443 n. 3 (1993)).

Plaintiffs point to Judge Cannon's deposition testimony that "the employees knew" about his practice of providing notice, progressive discipline, and good cause for termination, and that he informed his employees of this practice "[i]n a meeting."  (Cannon Dep. 118-19.)  Judge Cannon further testified that the Clinton Township DAP and his original court policy were "in effect, identical[,]" and that he circulated the written DAP to his employees.  (Cannon Dep. 133-34.)

Plaintiff Nancy Englar testified at trial that she received a copy of the Clinton Township DAP policy, and that she specifically asked Judge Cannon, "'Is this what you follow? Is this what we're doing here?'  And he said, 'Yes.'" (Jan. 17, 2012 Trial Tr. 95.)  Plaintiff Englar testified that Judge Cannon had followed the Township's DAP when imposing discipline against several court employees who were charged with improper usage of the court's Law Enforcement Information Network ("LEIN") system.  (Jan. 17, 2012 Trial Tr. 96-98.)

Taking the above testimony in a light most favorable to the prevailing Plaintiffs, this Court concludes that there was sufficient evidence for the jury's conclusion that there was a legitimate expectation of a just-cause employment termination policy. Again quoting the Sixth Circuit opinion in *Quicken Loans*, *supra*, "A court may grant judgment as a matter of law only when there is a complete absence of fact to support the verdict and may grant a new trial only when a jury has reached a seriously erroneous result." 2012 WL 5259000, at *2. This Court concludes that such is not the case here.

While Defendant presented trial testimony from several present and former Clinton Township 41B District Court employees, in the form of affidavits and witnesses, that Judge Cannon never circulated the DAP and never communicated a "just cause" employment policy, the Court, in the face of conflicting evidence at trial, cannot weigh this evidence and enter judgment in Defendant's favor. *Radvansky*, 496 F.3d at 614. The jury was free to accept or reject the testimony offered by Defendant, and they rejected it.

Defendant also argued that the published Clinton Township DAP is insufficient to create a legitimate expectation of "just cause" employment for the Plaintiffs. But Plaintiffs' evidence was not merely that the Clinton Township DAP was controlling, but also that it was adopted by Judge Cannon as his court's policy.

Further, the jury heard deposition testimony of Judge Cannon stating that his practice was to provide notice, progressive discipline, and good cause for termination. (Cannon Dep. 118.) Plaintiff Barachkov testified that she believed she was a just-cause employee. (Jan. 12, 2012 Trial Tr. 13.) Plaintiff Diehl testified that, except for Judge Cannon's secretary, the court officer, and the court administrator, she concluded that all other employees who worked at the 41B

12

District Court were just-cause employees.  (Jan. 18, 2012 Trial Tr. 159.)  Plaintiff Englar also

testified that she believed Judge Cannon followed a "just cause" employment practice.  (Jan. 17,

2012 Trial Tr. 95.)  This evidence supports the jury's finding that Plaintiffs were just-cause

employees.

**B.  Qualified Immunity**

"Qualified immunity 'gives government officials breathing room to make reasonable but

mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly

violate the law.'"  *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1244 (2012).  Defendant is

entitled to this defense "irrespective of whether the official's error was a mistake of law or a

mistake of fact, or a mistake based on mixed questions of law and fact."  *Chappel v. City of

Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).  "Qualified immunity protects government

officials performing discretionary functions unless their conduct violates a clearly established

statutory or constitutional right of which a reasonable person in the official's position would

have known."  *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (citing *Harlow v.

Fitzgerald*, 457 U.S. 800, 818 (1982)).  Defendant is thus entitled to qualified immunity unless

the evidence produced at trial, viewed in a light most favorable to Plaintiffs, "would permit a

reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right

was clearly established."  *Morrison v. Board of Trustees of Green Township*, 583 F.3d 394, 400

(6th Cir. 2009).  "The relevant, dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable officer that his conduct was unlawful in

the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "Once the qualified

immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not

entitled to qualified immunity." *Silberstein*, 440 F.3d at 311; *accord, Sutton v. Metro. Gov't of Nashville*, — F.3d —, 2012 WL 5935381, at *3 (6th Cir. Nov. 28, 2012); *Andrews v. Hickman County*, — F.3d —, Nos. 10-6462/6464, slip op. at 9 (6th Cir. Dec. 3, 2012).

When viewing the evidence in a light most favorable to Plaintiffs, a reasonable juror could conclude that Plaintiffs had a property interest in continued employment. Thus, the Court must determine whether Judge Cannon's just-cause employment practice would or should have been clear to Defendant Chief Judge Davis at the time she terminated Plaintiffs' employment. *See Silberstein*, 440 F.3d at 317 (holding that employee was clearly established as "just cause" employee "not only by the plain language of the Charter but also by general understanding and practice" where "for twenty-five years it had been generally understood that employees in his position were entitled to a hearing before their positions were terminated."); *see also Savage v. City of Pontiac*, No. 10-2453, 2012 WL 1959310, *6 (6th Cir. 2012) (unpublished) (holding that employee was "just cause" employee where "[t]he Charter provides that an auditor – the very title given to Savage – may be removed only for cause. Further, Savage was appointed for a fixed term of employment as the Charter provides.").

Defendant argues that the prior opinions in this case demonstrate that Plaintiffs' employment status was not "clearly established" at the time of termination. Defendant contends that the Sixth Circuit found a question of fact regarding the "exact contours of the termination policy – if any existed – employed by Judge Cannon," *Barachkov*, 311 Fed. Appx. at 872. This Court concludes that the Sixth Circuit did not rule that Plaintiffs' status was not clearly established at the time of termination, but rather that the facts on this issue had yet to be established. That was the basis for the Court of Appeals' remand to this Court for trial. This

14

Court also had found prior to the trial that a genuine issue of material fact existed as to Judge Cannon's termination policy. (April 4, 2011 Op. and Order 3-4.)

The record evidence as it existed prior to trial has now been superseded by the facts established at the trial. *See Nolfi*, 675 F.3d at 545. Accordingly, now the Court must determine whether the evidence at trial established that Plaintiffs were just cause employees, and if yes, whether Plaintiffs' constitutional right to procedural due process was not denied them.

Thus, the contours of the inquiry are whether Plaintiffs were just cause employees, whether Defendant Chief Judge Davis should have been aware of that, and whether she terminated them without providing the procedural due process due to just cause employees. The jury heard the evidence and concluded that Plaintiffs were just cause employees, and that Defendant terminated them without providing procedural due process. Defendant's argument is that she did not have any reason to conclude that Plaintiffs were just cause employees when she terminated them at the behest of the SCAO, even though she was the individual legally authorized to make that decision. Defendant Chief Judge Davis testified that the SCAO does not have the ability or authority to fire court employees; that the Chief Judge has that authority. (Jan. 4, 2012 Trial Tr. 104-05.)

It was undisputed at trial that Defendant Chief Judge Davis was not involved in the day-to-day operation of the 41B District Court in Clinton Township prior to the initiation of the SCAO investigation. Defendant Davis testified that she left management of the Clinton Township location to Judge Cannon.

> Q      . . . . Now, with regard to the Clinton Township building,
> pursuant to what you are going to tell us in this court,
> Judge Cannon was in charge of the day-to-day operations
> of that building?

15

A       That's correct.
Q       Is that your testimony?
A       That's correct.
Q       Not you, right?
A       No.
Q       And you thought he was running it the way he saw fit,
        right?
A       Yes.
Q       And you never went over there to find out how he was
        running the court with regard to his personnel policies, did
        you?
A       No.

(Jan. 6, 2012 Trial Tr. 77-78.)

SCAO official Deborah Green testified that "historically Judge Cannon ha[d] acted as

presiding judge of Clinton Township."  (Jan. 6, 2012 Trial Tr. 118.)  Green testified that

Defendant was not involved in any of the operations at the Clinton Township location until after

the initiation of the SCAO investigation:

Q       And you wanted the judge [Defendant] to realize that she
        was chief and that she should be the one calling the shots,
        am I correct on that, as your involvement with her went on?
A       Yes.  She needed to take control of that court.
Q       Thank you.
A       Back from Judge Cannon.
Q       When did she take control back, if you know?
A       Well, when we started, I felt that when we started the
        investigation, she stepped up to the plate and we assisted
        her.

(Jan. 6, 2012 Trial Tr. 126-27.)

When Defendant Chief Judge Davis "took control back," she was aware that her

unionized staff in the Mt. Clemens courthouse was employed under a just cause termination

policy, and that Judge Cannon's staff in the Clinton Township courthouse was non-union.

Defendant further testified, on questioning by Plaintiffs' counsel, that Judge Cannon

16

never told her about his personnel policies, and specifically did not tell her that he followed the

Township's Progressive Discipline Policy:

> Q   All right.  So, in any event, you don't know what Judge
>      Cannon's actual practices were?
> . . . .
> A   We asked him, when we were doing the merger of the
>      courts, what his policies and practices were, and he said he
>      did not have any, that he didn't really have to discipline
>      people very often at the township.  So to my knowledge
>      there were none.
> Q   Do you remember telling me at your deposition that you
>      had no idea what his progressive discipline policy was?
> A   I didn't have any idea if he had a progressive policy or not.
>      He told me he did not.  I was not there to see that.

(Jan. 4, 2012 Trial Tr. 87.)

Green testified that, during the SCAO investigation, the Clinton Township employees

never provided her with any written policies, including the Disciplinary Action Policy.  (Jan. 6,

2012 Trial Tr. 139.)  However, some employees told Green that they believed they were covered

by Clinton Township employment policies.  (Jan. 6, 2012 Trial Tr. 135.)  Green testified that

these employees did not refer to the specific "just cause" personnel policies used by Clinton

Township, but some employees did inform her that if there were any such procedures applicable,

they would be at Clinton Township:

> Q   Did anyone provide you a personnel policy?
> A   No.
> Q   Did anyone during the interview process refer you to a
>      personnel policy adopted or applied by the court?
> A   Some employees made reference to things like, well, if
>      there were any procedures, they would be at the township.
>      But no, not specifically court policies.
> Q   Did you learn if those procedures at the township related to
>      pay and benefits?
> A   Right.  That was the only thing anybody ever mentioned to
>      us, was the time, leave time stuff.

17

> Q        Outside of those procedures relating to pay and benefits,
>          I'm talking about personnel policies, did any employee
>          refer you to a personnel policy relating to court employees?
> A        No.
> Q        Did anyone refer you to a handbook relating to court
>          employees?
> A        No.
> Q        Did anyone describe to you or provide to you a copy of
>          Clinton Township's disciplinary action procedure?
> A        No.

(Jan. 9, 2012 Trial Tr. 154-55.)

Defendant Davis testified that she never saw any specific document or policy that provided for "just cause" employment for the Clinton Township employees:

> Q        Isn't it true that when you said you'd never seen anything
>          specific, you meant the court itself had never come up with
>          any policy of its own, right?
> A        I have never seen anything that was provided by the court
>          or the township that indicated those were court policies or
>          procedures.

(Jan. 5, 2012 Trial Tr. 61.)

Defendant Chief Judge Davis did not attend any of the SCAO interviews, and thus relied on Green's statements to her regarding the employees' personnel policies.  (Jan. 6, 2012 Trial Tr. 49.)  And Green's testimony about her notes from employee interviews left significant questions about which interviewee said what.  Often, she took notes of multiple interviews on a single sheet of paper, and could not, at trial, identify with certainty the specific employee.  Green did not take specific notes identifying statements made by specific employees.  Significantly, Green did not attend Defendant Davis' terminations of each of the three Plaintiffs.

Thus, the evidence established that the termination procedure played out as follows:

1.  The SCAO began an investigation of the Clinton Township court, and coordinated its

18

activity with Defendant Chief Judge Davis.

2.  Defendant Chief Judge Davis met with the Clinton Township court employees that they would be interviewed by the SCAO and that if they told the truth their jobs would be secure.

3.  The SCAO, primarily Deborah Green, interviewed all of the Clinton Township court employees individually about Judge Cannon's activities at the Clinton Township court, the activities of his wife who was the Court Administrator and allegedly a "no show," and whether the Cannons were continuously using many court employees for personal matters, e.g., picking up their children from school, doing the children's homework, helping the Cannons move to a new house, and fixing up the new house.

4.  Green testified that almost all of the court employees except the three Plaintiffs told her of the Cannons' continuous improper personal use of court employees.

5.  The SCAO told Defendant Chief Judge Davis to fire the three Plaintiffs for lying, because they did not state that the Cannons were improperly using court employees for personal matters.

6.  Defendant Chief Judge Davis said she would not fire the three Plaintiffs unless the SCAO ordered her to do it.

7.  The SCAO provided Chief Judge Davis with a letter telling her to fire the three Plaintiffs.

8.  Defendant Chief Judge Davis, with an SCAO employee (not Green) present, called each Plaintiff into an office, separately, and fired them for lying – no prior notice, nor offer of a hearing, no offer of an opportunity to respond or rebut:

19

> [Chief Judge Davis]: I told them that the State had -- that they had directed me to terminate the three of them because of the information that they gave was false and that they had also indicated that they would give them a chance to resign if they chose to do that.
>
> Q     And was there a period of time for them to consider whether they wanted to resign?
>
> A     Twenty-four hours.

(Jan. 6, 2012 Trial Tr. 55.)  Defendant Chief Judge Davis further noted that none of the Plaintiffs called her during that twenty-four hour period to resign or request a hearing.  (*Id.*)

Since Judge Cannon testified that he had not terminated an employee since the 1980s, well before Defendant Davis became Chief Judge of the 41B District Court, there was no recent conduct verifying Judge Cannon's termination procedures.  Judge Cannon testifed:

> Q     How many employees of the 41B District Court have you terminated?
>
> A     As nearly as I can recall, it was -- how many have I terminated?
>
> Q     Yes, sir.
>
> A     One, two -- I think there were three in twenty-eight years.  I know two for sure.  The third one was -- I think there was another one and I can't recall.
>
> Q     Who were the two you recall?
>
> A     One was a woman by the name of -- oh boy.  Betty Lewis.  She was a civil clerk, Betty Lewis.  She was one and the other one was a redheaded gal whose name escapes me.  I'll think of it.  And it could be easily tracked.
>
> ( . . . . )
>
> Q     And you said there might have been a third.  Do you recall if there was now or not?
>
> A     I think there was a third, I'm almost sure.  Yeah.  There was a girl that I inherited when I got elected and I can't remember her name.
>
> ( . . . . )
>
> A     Excuse me, Mr. Ferrand.  Jan.  I think her name was Jan,

20

the redhead.  Jan something.

( . . . . )

Q    This practice, Judge, that you implemented where you met
      with employees -- by the way, when were these employees
      terminated?
A    The dates?
Q    Just approximate dates and times.
A    Well, the first young lady was within a few years of my
      being elected.
Q    So Ms. Lewis would have been in the seventies? Is she the
      first?
A    No.  No, the first one was the young girl that I inherited
      from the old judge and she couldn't do the job.
Q    So she was in the seventies.
A    Yeah.
Q    The criminal clerk where you found money in --
A    Right.  That was probably seventies or very early eighties.
      Ms. Lewis had been there quite a while.  She was probably
      in the eighties and Jan, I think was the last one, and she
      would have been in the eighties also.  As nearly as I can
      remember now.

(Cannon Dep. 108–09, 110, 112, 117-18 (Dkt. No. 54).)

In *Savage*, 2012 WL 1959310, the Sixth Circuit considered evidence purporting to show

that the plaintiff's employment status was not clearly established.  *Id.* at *6.  Citing *Silberstein*,

the Sixth Circuit noted that "we may consider 'general understanding and practice' when

determining an employee's true status."  *Id.*  The Court then stated:

> Marshall's single affidavit falls far short of establishing that, as a
> general matter, Legislative Auditors in Pontiac were viewed or
> treated as department heads.  In *Silberstein*, "[n]umerous facts on
> the record demonstrate[d] that [plaintiff's] position was generally
> understood to be classified," such as the treatment of former
> employees, the procedures the plaintiff followed to obtain her job,
> previous legal opinions on her status issued by the municipality,
> and the particular functions that she performed.  No such wealth of
> evidence exists here.

21

*Id* (citations omitted).

In the instant matter, while there was no wealth of evidence documenting that Plaintiffs were just-cause employees, there was evidence from the testimony of Plaintiffs and Judge Cannon.  In addition, evidence at trial demonstrated that Judge Cannon never discussed his employment practices with Defendant Chief Judge Davis and that Chief Judge Davis, over the years, had never raised this matter with Judge Cannon – separate fiefdoms.  Accordingly, Defendant Chief Judge Davis did not have any knowledge of Cannon's prior employment practices, e.g. his prior termination practices in the 1970s and 1980s.  Summarizing, Defendant Chief Judge Davis testified that the Clinton Township court operated as a separate entity, with its own employment procedures, and that Defendant Davis never came over to the Clinton Township courthouse in her role as Chief Judge of the 41B District Court until the investigation began.

Plaintiffs also argue that the jury could have inferred that Defendant was aware of Judge Cannon's just cause employment policy based on testimony that, after the terminations, Defendant Chief Judge Davis told 41B District Court staff, local newspapers, and the Clinton Township Board of Trustees, that Plaintiffs were terminated for lying, i.e., advocating a just cause to terminate them.  (Jan. 5, 2012 Trial Tr. 49-51.)

Plaintiffs further argue that Defendant Davis' request to the SCAO for a letter directing her to terminate Plaintiffs also validates their claim that she knew Plaintiffs were just-cause employees because she wanted "cover" for her decision.  It is undisputed that Defendant Chief Judge Davis did request that the SCAO put its directive to terminate Plaintiffs in writing before terminating Plaintiffs' employment.  (Jan. 5, 2012 Trial Tr. 46.)

22

Plaintiffs further argue that Defendant Chief Judge Davis was aware of a Michigan Supreme Court administrative order requiring individual courts to mirror as closely as possible the policies of their respective funding units.  (Jan. 4, 2012 Trial Tr. 69-70.)  Because the 41B District Court's funding unit, Clinton Township, is a just-cause employer, and thus Plaintiffs contend that Defendant knew Plaintiffs were just-cause employees.  The Court concludes that this proposed conclusion does not follow as a matter of fact, or law, because despite this administrative order, it was undisputed at trial that "at the end of the day" Judge Cannon was permitted to develop his own personnel policies:

> Q     The procedure goes on to say: "Effective operation of the
>       court may require a single uniform personnel policy that
>       does not wholly conform with the specific policy of the
>       court's funding unit," right?
> A     Correct.
> Q     So if you really want to, you can come up with your own,
>       but generally the law says, "have a personnel policy that's
>       consistent with the city you serve," agreed?
> A     Whenever possible.

(Testimony of Chief Judge Davis, Jan. 4, 2012 Trial Tr. 77.)

A central issue is whether there was an obligation by Defendant Chief Judge Davis to determine the policy under which the Plaintiffs were employed before terminating them.

It was undisputed at trial that Defendant Chief Judge Linda Davis was legally the decision maker in the process of terminating the three Plaintiffs.  As such, it was her responsibility to determine, prior to the terminations, whether Judge Cannon's employees were just cause employees.  The SCAO's determination and its letter instructing Defendant Davis to terminate the three Plaintiffs does not shield her from this obligation.  Further, Defendant Chief Judge Davis' abrupt terminations of the three Plaintiffs eliminated the possibility of the Plaintiffs

23

providing her with information in favor of their positions.  Deliberate indifference or obliviousness by the decision-maker to the critical constitutional issue – were the Plaintiffs just cause public employees – is not a basis for granting the decision-maker qualified immunity.  *See Campbell v. City of Springboro, Ohio*, — F.3d —, No. 11-3589, slip op. at 14 (6th Cir.  Nov. 29, 2012).

The jury's Verdict Form concluded (1) that Plaintiffs were "just cause" employees, (2) that Defendant Judge Linda Davis' terminations violated the Plaintiffs' procedural due process rights, and (3) that there was not "just cause" for termination.  Given the recent Sixth Circuit ruling in *Henry v. Quicken Loans*, *supra*, this Court cannot conclude that no reasonable juror could have found for the Plaintiffs.

The Sixth Circuit, in discussing the applicability of the defense of qualified immunity, has stated:

> The critical question is whether it "' would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted.'" *Slusher v. Carson*, 540 F.3d 449, 456 (6th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

*Savage v. City of Pontiac*, No. 10-2453, 2012 WL 1959310, at *5 (6th Cir.  May 20, 2012).

Defendant Chief Judge Davis testified that she relied 100 percent on the dictate of the SCAO.  The evidence at trial also established that the SCAO investigation had aspects of a "Keystone Cops" investigation: Deborah Green was often unable to identify with certainty from her notes, which employee said what at her interviews.  Although Defendant Chief Judge Davis testified that previous-in-time, during the court merger process, she had asked Judge Cannon for a copy of his personnel policies and did not receive any, she did not at the time of the Plaintiffs' terminations conduct any due diligence that would have permitted her to make a proper

24

determination of this critical issue.  This Court concludes that, because Defendant Chief Judge

Linda Davis did not take it upon herself to make a reasonable determination (1) whether

Plaintiffs were "just cause" employees, and (2) whether there was just cause for their

termination, she is not entitled to qualified immunity.

## V.  CONCLUSION

For the reasons stated above, the Court will:

1.  **DENIES** Defendant's Motion for Judgment As a Matter of Law;

2.  **DENIES** Defendant's Motion for New Trial, and

3.  **DENIES** Defendant's request to enter judgment in favor of Defendant Chief Judge

Linda Davis.

Defendant's Motion to Amend the Judgment Regarding Damages will be decided

subsequently.


**SO ORDERED**.


                                        S/Paul D. Borman_____
                                        PAUL D. BORMAN
                                        UNITED STATES DISTRICT JUDGE

Dated:  December 3, 2012

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on
December 3, 2012.


                                        S/Denise Goodine_____
                                        Case Manager