UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA BARACHKOV, *et al.*,

        Plaintiffs,

vs.

        Case No. 04-CV-73957, 04-CV-73977
        Paul D. Borman
        United States District Judge

CHIEF JUDGE LINDA DAVIS, *of the
41B District Court, individually and in her
official capacity,*

        Defendant.
_____/

**OPINION AND ORDER
(1) GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS AND
INTEREST (Dkt. No. 173),
(2) AMENDING THE JUDGMENT TO ALLOW THE APPORTIONMENT OF
PREJUDGMENT AND POST-JUDGMENT INTEREST, and
(3) GRANTING DEFENDANT'S MOTION FOR APPROVAL OF RECOGNIZANCE IN
LIEU OF APPEAL BOND AND TO STAY PROCEEDINGS (Dkt. No. 205)**

        This matter is before the Court on Plaintiffs' post-trial Motion for Attorneys' Fees, Costs and Interest, filed on February 24, 2012 (Dkt. No. 173), and Defendant's Motion for Approval of Recognizance in Lieu of Appeal Bond and to Stay Proceedings, filed on March 15, 2013 (Dkt. No. 205). Both motions have been fully briefed, and the Court will decide them without oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

        For the reasons stated below, the Court will:

        (1) GRANT Plaintiffs' Motion for Attorneys' Fees, Costs and Interest,

        (2) AMEND the Judgment to allow the apportionment of prejudgment and post-judgment interest, and

1

(3) GRANT Defendant's Motion for Approval of Recognizance in Lieu of Appeal Bond and to Stay Proceedings.

## I. BACKGROUND

The facts in this case were discussed in this Court's December 3, 2012 Opinion and Order Denying Defendant's Motion for Judgment as a Matter of Law, Denying Defendant's Motion for New Trial, and Denying Judgment in Favor of Defendant Chief Judge Linda Davis. (Dkt. No. 198.) The Court incorporates the Background section of that Opinion and Order herein. (Dec. 3, 2012 Op. and Order at 2-9.)

On March 14, 2013, Defendant Chief Judge Linda Davis filed a Notice of Appeal of this Court's December 3, 2012 Opinion and Order, and a February 15, 2013 Opinion and Order Denying Defendant's Motion to Amend the Judgment Regarding Damages, and Denying Defendant's Motion for Clarification/Relief From Judgment or Order. (Dkt. No. 203.) On March 28, 2013, Plaintiffs filed a Notice of Cross Appeal. (Dkt. No. 206.)

Now before the Court are Plaintiffs' post-trial motion for attorneys' fees and Defendant's motion for approval of an appeal bond and to stay proceedings.

## II. ANALYSIS

### A. Plaintiffs' Motion for Attorneys' Fees, Costs and Interest

Plaintiffs seek $419,982.00 in attorneys' fees, $33,401.34[1] in costs, and pre-judgment and post-judgment interest.

Defendant concedes that Plaintiffs are entitled to attorneys' fees pursuant to 42 U.S.C. §

---

[1] Plaintiffs submitted $11,377.09 of their claimed costs to the Taxation Clerk pursuant to Fed. R. Civ. P. 54(d)(1). The amount Plaintiffs seek in the instant motion is therefore $22,024.25. The Taxation Clerk allowed $10,557.18 of Plaintiffs' claimed costs. (Dkt. No.201.)

1988.  However, Defendant argues that the amount of attorneys' fees requested by Plaintiffs is excessive.

"Reasonable attorney's fees under § 1988 should be calculated according to the prevailing market rates in the relevant community."  *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 627 (6th cir. 2013).  The initial inquiry in determining a reasonable attorney's fee "is the determination of the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by a reasonable hourly rate."  *Id*. (citation omitted).  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the fee accordingly."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A reasonable fee calculation also excludes "hours that are not 'reasonably expended.'"  *Id*. at 434.

*1.  Reasonable Hourly Rate*

A "reasonable hourly rate" for purposes of the lodestar calculation is "based on the 'prevailing market rate in the relevant community' for lawyers of comparable skill and experience . . . ."  *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 849 (6th Cir. 2013) (citation omitted); *see also Blum v. Stenson*, 465 U.S. 886, 895 (1984) (providing "that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community . . . .").

Plaintiffs' argue that a reasonable hourly fee for their lead attorney, Deborah Gordon, is $450.  Plaintiffs note that Ms. Gordon has been practicing law for 35 years, and that she specializes in employment discrimination and civil rights actions.  Plaintiffs also submit affidavits from prominent local attorneys recognizing that Ms. Gordon is a highly regarded employment attorney in this region.  (Pls.' Mot. for Attorneys' Fees, Costs and Interest, Exs. D and E, Affidavits of

3

Kathleen L. Bogas and Michael L. Pitt.)

In addition to Ms. Gordon, Plaintiffs seek an hourly rate of $300 for attorneys Sarah Prescott and Carol Laughbaum.  Plaintiffs request hourly rates of $250 for attorneys Margaret Sande and Marissa Pollick, $225 for attorney Sharon Dolente, $150 for attorney Jaclyn Giffen, and $55 for work performed by legal assistants.

As additional justification for their claimed hourly rates, Plaintiffs assert that the legal issues involved in this case were complex and difficult, as evidenced by the Sixth Circuit's Opinion and Order reversing this Court's prior grant of summary judgment for Defendant.  *See Barachkov v. 41B Dist. Court*, 311 F. App'x 863 (6th Cir. 2009).  Plaintiffs argue that the results obtained – a jury verdict of $2.2 million in Plaintiffs' favor – also justifies the claimed hourly rate for Plaintiffs' counsel.  Furthermore, Plaintiffs contend that their fees are justified based on the undesirability of this case, because Plaintiffs were unemployed and had difficulty paying costs, and because the Defendants originally included a state court and a sitting chief judge.  Plaintiffs have attached to their motion the 2010 Michigan Survey of Fees, produced by the State Bar of Michigan, which notes the hourly billing rates for attorneys practicing plaintiff employment litigation ranges from $200 in the 25th percentile to $400 in the 95th percentile.  (Pls.' Mot. for Attorneys' Fees, Costs and Interest, Ex. J, 2010 Mi. Survey of Fees 11.)  Plaintiffs also state that their counsel incurred significant costs while litigating this case, which lasted over six years.

Defendant argues that Plaintiffs' requested fees are excessive.  Defendant asserts that § 1988 is designed to allow civil rights plaintiffs to attract only "competent" counsel.  *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S.Ct. 1662, 1672 (2010) (noting that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil

4

2:04-cv-73957-PDB-DAS   Doc # 212   Filed 05/16/13   Pg 5 of 17   Pg ID 8146

rights case."). Under this reasoning, Defendant claims that the hourly rates for attorneys Deborah Gordon, Sarah Prescott, and Carol Laughbaum, should be limited to $230. Defendant argues that attorneys Marissa Pollick, Sharon Dolente, and Margaret Sande should receive $175 per hour. Defendant agrees that $150 per hour is a reasonable rate for attorney Jaclyn Giffen.

While the purpose of the fee-shifting provision in § 1988 is to attract "competent" counsel for civil rights plaintiffs, the Sixth Circuit has repeatedly held that, in implementing § 1988, courts should consider an hourly rate "that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *B & G Min., Inc. v. Director, Office of Workers' Compensation Programs*, 522 F.3d 657, 663 (6th Cir. 2008) (quoting *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 618 (6th Cir. 2007)). The Sixth Circuit has upheld "rates ranging from $250 to $450 per hour, depending on each attorney's experience." *Van Horn v. Nationwide Property and Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011). Furthermore, the United States Supreme Court has held that "an enhancement [to an attorney's fee] may be appropriate where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value . . . ." *Perdue*, 130 S.Ct. at 1674. Accordingly, the Court will consider the skill and experience of Plaintiffs' counsel in determining a reasonable hourly rate under § 1988.

Defendant also argues that Plaintiffs' proposed hourly rate is unreasonable because a contingency-fee agreement exists between Plaintiffs' and their counsel. Defendant contends that, if Plaintiffs' counsel receives a third of the $2.2 million verdict in this case, their hourly rate already amounts to more than $600.

The United States Supreme Court has remarked that a contingency-fee agreement may be

considered as a factor in determining the reasonableness of an award of attorney's fees. However, the "contingency-fee factor is simply that, a factor." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989). In addressing an argument similar to Defendant's, the Court stated in pertinent part as follows:

> It is true that the purpose of § 1988 was to make sure that competent counsel was available to civil rights plaintiffs, and it is of course arguable that if a plaintiff is able to secure an attorney on the basis of a contingent or other fee agreement, the purpose of the statute is served if the plaintiff is bound by his contract. On that basis, however, the plaintiff should recover nothing from the defendant, which would be plainly contrary to the statute. And Congress implemented its purpose by broadly requiring all defendants to pay a reasonable fee to all prevailing plaintiffs, if ordered to do so by the court. Thus it is that a plaintiff's recovery will not be reduced by what he must pay his counsel. Plaintiffs who can afford to hire their own lawyers, as well as impecunious litigants, may take advantage of this provision. And where there are lawyers or organizations that will take a plaintiff's case without compensation, that fact does not bar the award of a reasonable fee.

*Id*. at 93-94.

Defendant's argument that Plaintiffs' proposed hourly rates are unreasonable based on the contingency-fee agreement is not well founded. As noted *supra*, the contingency-fee agreement is only a factor in determining the overall reasonableness of an attorney fee award, and cannot unilaterally limit the Court's determination of a reasonable hourly rate. In other words, a losing defendant cannot limit its exposure under § 1988 based on the fee agreement privately entered into by the prevailing plaintiff and his or her counsel.

> In sum, § 1988 controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer. What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the "reasonable attorney's fee" that a defendant must pay pursuant to a court order.

*Venegas v. Mitchell*, 495 U.S. 82, 90 (1990).

6

In considering the evidence submitted by Plaintiffs in support of their proposed hourly rates, including Plaintiffs' attorneys' skill and experience, reputation in the community, and the 2010 Michigan Survey of Fees, the Court finds as follows:

- Based on her skill, experience, and reputation, $400 is a reasonable hourly rate for Plaintiffs' lead counsel, Deborah Gordon.

- A reasonable hourly rate for attorney Sarah Prescott is $300.

- Based on the evidence submitted by Plaintiffs, $250 is a reasonable hourly rate for attorney Carol Laughbaum.

- A reasonable hourly rate for attorneys Sharon Dolente, Margaret Sande, and Marissa Pollick, is $200.

- A reasonable hourly rate for attorney Jaclyn Giffen is $150.

- A reasonable hourly rate for Plaintiffs' counsels' legal assistants is $55.

### 2. Hours Reasonably Expended on the Litigation

Plaintiffs have submitted hourly billing statements and claim that attorney Deborah Gordon reasonably expended 468 hours spent on this litigation, attorney Sarah Prescott expended 414.5 hours, attorney Carol Laughbaum expended 36.7 hours, attorney Marissa Pollick expended 172 hours, attorney Margaret Sande expended 43.5 hours, attorney Sharon Dolente expended 31.8 hours, attorney Jaclyn Giffen expended 40.3 hours, and legal assistants expended 125.4 hours. (Pls.' Mot. for Attorneys' Fees, Costs and Interest, Ex. A, Verified Time spreadsheets.)

Defendant argues that Plaintiffs attempt to bill for various internal communications, including review of other attorneys' work product, which constitutes redundant billing. *See Hensley*, 461 U.S. at 434 (noting that "[c]ases may be overstaffed, and the skill and experience of lawyers

7

vary widely.  Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . .").

Although attorney Deborah Gordon has submitted billing statements reflecting in excess of 600 hours spent on this litigation, Plaintiffs only seek 468 hours of attorney fees for Ms. Gordon. If all of the allegedly redundant billing objected to by Defendant were removed from attorney Deborah Gordon's billing statements, Ms. Gordon would still have nearly 600 hours of attorney fees in this matter based on those statements.  The Court thus finds that 468 hours is a reasonable representation of the time spent by attorney Deborah Gordon on the instant litigation.

Defendant also objects to Plaintiffs' other attorneys billing for inter-staff emails, discussions, and other internal communications.  Defendant further argues that the billing statements reflect an excessive amount of time preparing for the instant motion for attorneys' fees, indicating that Plaintiffs' counsels' did not maintain contemporaneous billing records, which Defendant contends requires a reduction in fees.

The Court agrees that a modest fee reduction is warranted based on redundant and otherwise unnecessary billings submitted by Plaintiffs.  The Court will thus exclude from Plaintiffs' counsels' billing statements any time expended on internal communications between Plaintiffs' attorneys that did not include contact with Plaintiffs.  Accordingly, the Court finds as follows:

•    Attorney Sarah Prescott reasonably expended 404.7 hours on the instant litigation.

•    Attorney Carol Laughbaum reasonably expended 35.5 hours on the instant litigation.

•    Attorney Sharon Dolente reasonably expended 27.4 hours on the instant litigation.

•    Attorney Margaret Sande reasonably expended 40 hours on the instant litigation.

•    Attorney Marissa Pollick reasonably expended 157.1 hours on the instant litigation.

8

- Attorney Jaclyn Giffen reasonably expended 36.9 hours on the instant litigation.

The Court will exclude any time expended by legal assistants to check/verify time entries in preparation for the instant attorney fees motion. The Court finds that Plaintiffs' counsels' legal assistants reasonably expended 112.3 hours on the instant litigation.

*3. Lodestar Amount*

Having determined a reasonable hourly rate and reasonable hours expended for each of Plaintiffs' attorneys and their legal assistants, the Court thus finds as follows regarding the "lodestar" amount for Plaintiffs' attorneys' fees:

- Attorney Deborah Gordon: $400 x 468 hours = $187,200.00

- Attorney Sarah Prescott: $300 x 404.7 hours = $121,410.00

- Attorney Carol Laughbaum: $250 x 35.5 hours = $8,875.00

- Attorney Sharon Dolente: $200 x 27.4 hours = $5,480.00

- Attorney Margaret Sande: $200 x 40 hours = $8,000.00

- Attorney Marissa Pollick: $200 x 157.1 hours = $31,420.00

- Attorney Jaclyn Giffen: $150 x 36.9 hours = $5,535.00

- Legal assistants: $55 x 112.3 hours = $6,176.50

- Total lodestar amount = $374,096.50

*4. Fee Enhancement*

Plaintiffs argue that they are entitled to a fee enhancement of at least 10 percent.

"[E]nhancements may be awarded in 'rare' and 'exceptional' circumstances." *Perdue*, 130 S.Ct. at 1673. While "there is a 'strong presumption' that the lodestar figure is reasonable, . . . that presumption may be overcome in those rare circumstances in which the lodestar does not adequately

9

take into account a factor that may properly be considered in determining a reasonable fee." *Id.* The

Supreme Court has thus noted that an enhancement to the lodestar amount is appropriate in three

situations:

> First, an enhancement may be appropriate where the method used in
> determining the hourly rate employed in the lodestar calculation does
> not adequately measure the attorney's true market value, as
> demonstrated in part during the litigation. . . .
>
> Second, an enhancement may be appropriate if the attorney's
> performance includes an extraordinary outlay of expenses and the
> litigation is exceptionally protracted. . . .
>
> Third, there may be extraordinary circumstances in which an
> attorney's performance involves exceptional delay in the payment of
> fees. . . . [A]n enhancement may be appropriate where an attorney
> assumes these costs in the face of unanticipated delay, particularly
> where the delay is unjustifiably caused by the defense. . . .

*Id.* at 1674-75.  Furthermore, the Court may consider the following factors in considering an

enhancement to the lodestar amount:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the skill requisite to perform the legal service properly;
> (4) the preclusion of employment by the attorney due to acceptance
> of the case; (5) the customary fee; (6) whether the fee is fixed or
> contingent; (7) time limitations imposed by the client or the
> circumstances; (8) the amount involved and the results obtained; (9)
> the experience, reputation, and ability of the attorneys; (10) the
> "undesireability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar
> cases.

*Hensley*, 461 U.S. at 430 n. 3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-

19 (5th Cir. 1974)).

Plaintiffs argue that an enhancement is appropriate in this matter based on the length of the

litigation, the time and dedication required by Plaintiffs' counsel, and the professional risk assumed

10

by Plaintiffs' counsel in suing a local court and its chief judge. *See Pucci v. Somers*, 834 F. Supp. 2d 690, 703-04 (E.D. Mich. 2011) (Lawson, J.) (finding than a five percent fee enhancement was appropriate where the "case placed extraordinary demands on counsel's time[;] . . . [the] case lasted for more than four years[;] . . . [and t]he Plaintiff was suing a sitting chief judge in a local district court.").

The Court notes that, unlike the small-firm practitioner in *Pucci*, Plaintiffs' counsel had several attorneys working on this case throughout the litigation. The plaintiff in *Pucci* was represented by two attorneys. In the instant matter, Plaintiffs had seven attorneys at their disposal, as well as a team of legal assistants. Furthermore, while this litigation has now spanned more than eight years, much of the delay was due to clarifications in the law regarding Plaintiffs' First Amendment claim and Defendant's sovereign immunity defense. While possibly unanticipated by Plaintiffs, this delay was not caused unjustifiably by Defendant. To the extent that Plaintiffs' case was "undesireable," the Court finds that its calculation of Plaintiffs' counsels' lodestar amount adequately incorporates this factor. Plaintiffs' lead counsel is a skilled and experienced litigator who has an established reputation, even in 2004 when this case was originally filed, of suing local government entities. Any professional risk taken by Plaintiffs' counsel in pursuing the instant litigation against Defendant Chief Judge Linda Davis is subsumed in the reasonable hourly rate used in calculating the lodestar figure, *supra*. The Court also notes that Plaintiffs have not produced any evidence showing that the instant suit against a local court and chief judge somehow damaged, or risked damaging, Plaintiffs' counsels' reputation in the legal community. *See Perdue*, 130 S.Ct. at 1673 (noting that "a fee applicant seeking an enhancement must produce 'specific evidence' that supports the award.").

11

The Court therefore finds that a fee enhancement is not appropriate in this case.

*5.  Degree of Success*

Defendant argues that Plaintiffs' fees should be reduced to one-thirteenth of the requested fee due to Plaintiffs' "limited success" in this case.  Because Plaintiffs filed multiple claims, including a First Amendment claim and several state-law causes of action, but only prevailed on their Due Process claim, Defendant contends that Plaintiffs' fees should be reduced.

In *Hensley*, the Supreme Court noted that when "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  *Hensley*, 461 U.S. at 436.  The Court also stated that some cases "will involve a common core of facts or will be based on related legal theories[,]" and that these cases "cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Id*. at 435.  Therefore, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . .  In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."  *Id*.  *See also DiLaura v. Township of Ann Arbor*, 471 F.3d 666, 673 (6th Cir. 2006) (finding that district court abused its discretion in reducing the plaintiffs' request for fees, and noting that "[b]y focusing on the fact that most of the plaintiffs' claims failed, the district court does what *Hensley* specifically forbids: it analyzes a series of related legal claims based on a common core of facts, and determines the amount of fees, not based on the Plaintiffs' overall success, but based on the success or failure of the individual claims.").

In the instant case, Plaintiffs' claims all arose from a common core of facts: the investigation

of Judge William Cannon and the 41B District Court and the subsequent termination of Plaintiffs'
employment. The Court will not, therefore, reduce the amount of fees claimed by Plaintiffs based
on the dismissal of most of Plaintiffs' claims. The damages they obtained under their Due Process
theory were substantially the same damages Plaintiffs requested under their now-dismissed alternate
theories of recovery: loss of past and future earnings. Accordingly, the Court finds that no reduction
to the lodestar amount is warranted based on Plaintiffs' failure to succeed on every claim initially
brought against Defendant.

*6. Costs*

Defendant does not object to Plaintiffs' request for costs.

Plaintiffs request $33,401.34 in costs. Plaintiffs have submitted $11,377.09 of this total to
the taxation clerk. The Court will thus award Plaintiffs $22,024.25 in costs, which reflects the
amount of their requested costs that has not been submitted to the taxation clerk.

*7. Interest*

There is no dispute that Plaintiffs are entitled to post-judgment interest.

Plaintiffs also request prejudgment interest. Defendant admits that Plaintiffs are eligible for
prejudgment interest based on the award of back pay, but argue that, because Plaintiffs' back pay
award is not separated from their other "economic damages," it is not possible to accurately
calculate the amount of prejudgment interest applicable to Plaintiffs' back pay award.

"This court commonly awards prejudgment interest on back pay awards." *EEOC v. Wilson
Metal Casket Co.*, 24 F.3d 836, 842 (6th Cir. 1994). "Indeed, it is ordinarily an abuse of discretion
*not* to include pre-judgment interest in a back-pay award." *EEOC v. Kentucky State Police Dept.*,
80 F.3d 1086, 1098 (6th Cir. 1996) (citation and internal punctuation omitted, emphasis in original).

13

The United States Supreme Court has held "that a postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e)." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989). This is because, in part, "prejudgment interest is an element of plaintiff's complete compensation." *Id*. (citation and internal punctuation omitted). Thus, "[i]n deciding if and how much prejudgment interest should be granted, a district court must examine – or in the case of a postjudgment motion, reexamine – matters encompassed within the merits of the underlying action." *Id*.

Plaintiffs argue that the Court should compute the back pay loss awarded by the jury based on the evidence presented during closing arguments. The back pay amounts presented to the jury by Plaintiffs' counsel during closing argument were $400,928 for Plaintiff Nancy Englar, $333,631 for Plaintiff Carol Diehl, and $338,054 for Plaintiff Patricia Barachkov. (Pls.' Reply, Ex. L, Calculation of Loss in Compensation.) The jury awarded total economic damages of $508,927 to Plaintiff Englar, $455,849 to Plaintiff Diehl, and $382,912 to Plaintiff Barchkov. Plaintiffs' would thus compute the economic damages as follows:

> Plaintiff Englar
> Back pay: $400,928
> Front pay: $107,999
>
> Plaintiff Diehl
> Back pay: $333,631
> Front pay: $122,218
>
> Plaintiff Barachkov
> Back pay: $338,054
> Front pay: $44,858

The Court agrees with Plaintiffs' computation of the economic damages and will amend the judgment so that prejudgment and post-judgment interest can be apportioned. *See Osterneck*, 489

U.S. at 175; *see also O'Sullivan Corp. v. Duro-Last, Inc.*, 7 F. App'x 509, 519-20 (6th Cir. 2001) (noting that the district court "should have granted O'Sullivan's motion to alter or amend the original judgment.  Doing otherwise placed O'Sullivan's prejudgment and post-judgment interest at risk . . . .").

Accordingly, the Court will GRANT Plaintiffs' Motion for Attorney Fees, Costs and Interest, and will further AMEND the judgment to allow an award of prejudgment and post-judgment interest.

## B.  Motion for Approval of Recognizance in Lieu of Appeal Bond and to Stay Proceedings

Defendant seeks to use her insurance policy as security in lieu of an appeal bond to stay enforcement of the judgment in this matter pending her appeal to the United States Court of Appeals for the Sixth Circuit.  Defendant's insurance policy, provided by the Travelers Insurance Company ("Travelers"), carries a $3,000,000 policy limit, and includes an excess liability portion up to $9,000,000, for total coverage of $12,000,000.  (Def.'s Reply, Ex. A, Insurance Policy.)  Defendant has attached to its Reply brief an Affidavit of Recognizance from Travelers that states as follows:

> Travelers admits its liability under the basic and umbrella excess provisions of the Policy and agrees to pay the Judgment for Plaintiffs, if it is affirmed by the appellate courts.  Travelers further recognizes that it is liable to Plaintiffs for the taxable costs of the appeal, if any.

(Def.'s Reply, Ex. B, Aff. of Recognizance.)

Federal Rule of Civil Procedure 62(d) provides:

> If an appeal is taken, the appellant may obtain a stay by supersedeas bond . . . .  The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal.  The stay takes effect when the court approves the bond.

Fed. R. Civ. P. 62(d).

Plaintiffs argue that the insurance policy is insufficient to cover the total amount of damages awarded to Plaintiffs, including interest, costs, and attorneys' fees. However, Plaintiffs' argument is based on the main policy limit of $3,000,000. Defendant's policy includes excess coverage providing an additional $9,000,000 in coverage. With the excess coverage, Defendant's insurance policy is worth $12,000,000, and is more than adequate to provide coverage for the damages, costs, fees, and interest in this matter. *See Arban v. West Publishing Corp.* 345 F.3d 390, 409 (6th Cir. 2003) (holding that, "[i]n light of the vast disparity between the amount of the judgment in this case and the annual revenue of the group of which West is a part, the district court's decision to grant a stay without a bond was not an abuse of discretion.").

Plaintiffs also argue "that an insurance policy carries with it various restrictions, limitations, requirements, qualifiers, offsets, etc. A supersedeas bond does not. The two simply are not comparable." (Pls.' Resp. in Opp. to Def.'s Mot. for Appeal Bond and to Stay at 4.) Any concern Plaintiffs have about Travelers attempting to avoid liability are addressed by the Affidavit of Recognizance, in which Travelers admits that it will pay the judgment if it is affirmed on appeal. (Def.'s Reply, Ex. B, Aff. of Recognizance.) Travelers has already admitted its liability for the judgment and promised to pay it if it is affirmed by the Sixth Circuit.

Plaintiffs argue that the equities in this case favor denial of a supersedeas bond, because Plaintiffs are financially vulnerable and were harmed nine years ago. The Court finds that equity in this matter demands maintaining the status quo until this matter is decided by the Sixth Circuit. The Court notes that this case involved difficult legal issues, as Plaintiffs pointed out in their Motion for Attorneys Fees, Costs and Interest. If Defendant's bond is not granted, and the judgment is then reversed on appeal, Defendant's insurer will likely never fully recover the millions of dollars it will

16

have paid to Plaintiffs.

Accordingly, the Court will GRANT Defendant's Motion for Approval of Recognizance in Lieu of Appeal Bond and to Stay Proceedings.

### III. CONCLUSION

For the reasons stated above, the Court will:

(1) **GRANT** Plaintiffs' Motion for Attorneys' Fees, Costs and Interest,

(2) **AMEND** the Judgment to allow the apportionment of prejudgment and post-judgment interest, and

(3) **GRANT** Defendant's Motion for Approval of Recognizance in Lieu of Appeal Bond and to Stay Proceedings.


**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  May 16, 2013
        Detroit, Michigan

### PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 16, 2013.

s/Deborah R. Tofil
Deborah R. Tofil