UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA BARACHKOV, *et al.*,

                Plaintiffs,

                                    Case No. 04-CV-73957, 04-CV-73977

vs.                                   Paul D. Borman
                                   United States District Judge

CHIEF JUDGE SEBASTIAN LUCIDO *of the*
*41B District Court, in his official capacity*,

                Defendant.
_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' EMERGENCY MOTION FOR REINSTATEMENT AND OTHER DECLARATORY RELIEF (ECF NO. 225) AND ORDERING DEFENDANT CHIEF JUDGE SEBASTIAN LUCIDO IN HIS OFFICIAL CAPACITY TO DEVELOP A PLAN WITHIN 60 DAYS TO REINSTATE PLAINTIFFS TO COMPARABLE POSITIONS WITH THE 41B DISTRICT COURT AND EDIT PLAINTIFFS' PERSONNEL FILES TO REFLECT THE JURY'S VERDICT

### I. INTRODUCTION

Now before the Court is Plaintiffs Patricia Barachkov, Nancy Englar, and Carol Diehl's

("Plaintiffs")  Emergency Motion for Reinstatement (Case no. 04-73957, ECF No. 225).[1]

Defendant Chief Judge Sebastian Lucido (in his official capacity) has responded to this motion

through his attorney Peter Peacock and Plaintiffs filed a reply. (Case no. 04-73957, ECF Nos.

244, 245).

_____

[1] On March 31, 2006, this case was consolidated with case 04-73977.  (Case no. 04-73957, ECF No. 62).  However, it was not until April 28, 2011 that this Court ordered all pleadings to be entered on the docket of consolidated case no. 04-73957.  Prior to this order some of the briefing appears on both dockets and some appears only on the other.  To avoid confusion, the Court will reference the case number along with the docket number when citing to the docket in this action.

The Court previously held oral argument on this motion and Plaintiffs' Motion to Substitute Proper Party in Interest on March 24, 2015. (Case no. 04-73957, ECF No. 231). Then Defendant Judge Linda Davis' attorney Timothy Ferrand had responded to both Plaintiffs' motion to substitute and their Emergency motion for reinstatement. However, after oral argument and briefing the Court granted in part the Plaintiffs' motion to substitute, finding that the current Chief Judge of the 41B District Court, Judge Sebastian Lucido, was the proper party in interest, striking then Defendant Judge Davis' responses to Plaintiffs' motion for reinstatement, (*see* case no. 04-73957 ECF No. 243, Court Order granting Motion to Substitute), and providing Defendant Chief Judge Lucido ("Chief Judge Lucido") the opportunity to respond to Plaintiffs' Motion for Reinstatement. (*Id.*). Defendant Chief Judge Lucido filed his response on April 27, 2015. (Case no. 04-73957, ECF No. 244). Thereafter, in accordance with the Court's order, Plaintiffs filed a supplemental reply. (Case no. 04-73957, ECF No. 245).

Oral argument on this issue was held on July 29, 2015. For all the following reasons, the Court will GRANT IN PART Plaintiffs' Emergency Motion for Reinstatement.

## II. BACKGROUND AND PROCEDURAL POSTURE

The Court recently summarized the long procedural posture of this case in its April 6, 2015 Opinion and Order reopening this action and granting in part Plaintiffs' Motion to Substitute Proper Party in Interest and therefore adopts that summary here. (*See* case no. 04-73957, ECF No. 243 at 2-4).

## III. ANALYSIS

Relevant to the issues before the Court now, the Sixth Circuit held in its most recent

decision in this case[2] that (1) the Plaintiffs' constitutional right to procedural due process was violated because the they received no pre-termination process and there was "sufficient evidence from which a reasonable juror could conclude the Employees had a legitimate expectation of just-cause employment", *Barachkov v. Davis* (*Barachkov II*), 580 F. App'x 288, 296 (6th Cir. 2014); and (2) former Defendant Judge Davis in her individual capacity was entitled to qualified immunity for the decision to fire the Plaintiffs without a pre-termination hearing because she "made an objectively reasonable determination that the Employees served at will", *Id*. at 298. The Sixth Circuit also recited the well-settled law that "[q]ualified immunity shields a defendant sued in his or her individual capacity from monetary liability; it does not shield a defendant from official-capacity claims for equitable relief, *Hall v. Tollett*, 128 F.3d 418, 430 (6th Cir. 1997), nor does it shield a defendant form individual-capacity claims for equitable relief, *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001)." *Barachkov II*, at 294.

    Also pertinent to the issues before this Court are those issues that the Sixth Circuit did not address, overturn, or mention in its most recent treatment of this case. Most notably, *Barachkov II* did not disturb or implicate the Jury's finding (as set forth in the verdict form) that there was not "just cause" to terminate any of the Plaintiffs. Indeed, relevant to this motion, *Barachkov II* only addressed issues relating to whether there was sufficient evidence that Plaintiffs' constitutional rights had been violated (finding in the affirmative) and whether Defendant Judge Davis' determination that the Plaintiffs served at-will was a reasonable determination given the facts such that qualified immunity was appropriate (finding in the

---

    [2] There are two Sixth Circuit opinions in this case, *Barachkov v. Davis* (*Barachkov I*), 311 F. App'x 863, 870-72 (6th Cir. 2009) and *Barachkov v. Davis* (*Barachkov II*), 580 F. App'x 288, 296 (6th Cir. 2014).

affirmative).

Accordingly, Plaintiffs now come before this Court in a legal scenario where a jury has determined that their constitutional right to due process was violated and that there was no "just cause" to terminate them, but are not entitled to the compensatory or punitive damages because former Defendant Judge Davis was entitled to qualified immunity.  Plaintiffs now renew their request for  prospective injunctive relief against the proper party in interest, Defendant Chief Judge Lucido, and seek "an Order compelling Defendant to remove negative information relating to their terminations from their personnel files, reinstating the Plaintiffs to the same or similar positions as the ones from which they were illegally removed, and issuing a declaratory judgment in their favors."  (Case No. 04-73957, ECF No. 225, at 3).

Defendant Chief Judge Lucido opposes Plaintiffs' request for reinstatement for a number of reasons.  The Court will address each in turn.

A.     Whether reinstatement is an available remedy in the context of a 14th Amendment Claim

It is a "well-settled principle that the nature and scope of the remedy are to be determined by the violation, means simply that federal-court decrees must directly address and relate to the constitutional violation itself."  *Milliken v. Bradley*, 433 U.S. 267, 282 (1977); *Carey v. Piphus*, 435 U.S. 247, 259 (1978) (holding that compensation for injuries flowing from the deprivation of a constitutional rights "should be tailored to the interests protected by the particular right in question"); *see also Brody v. Village of Port Chester*, 345 F.3d 103, 119 (2d Cir. 2003) (when due process is violated the appropriate remedy "depends on the stage at which the violation is found and the relief sought.").  In this action, Defendant Chief Judge Lucido argues that reinstatement is not "appropriate" in the context of a Fourteenth Amendment Due Process claim

4

in part because such a remedy would not address the constitutional violation that occurred.

Rather, Defendant Chief Judge Lucido contends that Plaintiffs are only entitled to have him

provide a "notice and hearing" to determine whether good cause existed for their terminations.

(Def.'s Resp. at 13).

Defendant Chief Judge Lucido's current argument is without merit.  First, the Sixth

Circuit in *Barachkov I* already indicated that equitable prospective relief was a possible available

remedy in this action.  *Barachkov v. Davis* (*Barachkov I*), 311 F. App'x 863, 872-73 (6th Cir.

2009).  Indeed, in *Barachkov I*, the Sixth Circuit specifically reversed this Court's previous

holding that prospective relief "e.g., injunction against further retaliation and reinstatement" was

not available, and clarified that "[i]t is settled law that "[a] state official in his or her official

capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-

capacity actions for prospective relief are not treated as actions against the state.'" (citations

omitted)).

Moreover, this Court has previously addressed the issue of damages and potential

remedies.  (*See* case no. 04-73977, ECF Nos. 123, 125, briefing by former Defendant Judge

Davis regarding whether prospective injunctive relief was appropriate or merely futile; case no.

04-73975: ECF No. 84 Opinion and Order allowing equitable claims to proceed; ECF No. 171

Defs.' Mot. To Amend Damages; ECF No. 200 Order Denying Motion to Amend Damages).

More specifically, after the first remand this Court addressed and rejected former Defendant

Judge Davis' argument that reinstatement was not a proper remedy against her in her official

capacity because it amounted to an end-around sovereign immunity.  (Case no. 04-73975, ECF

No. 84, at 4-7).  In its April 14, 2011 Order this Court stated that "Plaintiffs' claims for

5

prospective injunctive relief against Defendant Chief Judge Linda Davis [in her official capacity] should be allowed to go forward – but not Plaintiffs' claims with regard to damages and back pay." (*Id*. at 7). After the jury trial in this matter, this Court also rejected former Defendant Judge Davis' arguments that only nominal damages (if any) were appropriate. (*See* Case no. 04-73975, ECF No. 200).

Not only is Defendant Chief Judge Lucido's current argument (and former Defendant Judge Davis' previous argument) one in which it appears the Sixth Circuit and this Court have already previously addressed, but Defendant Cheif Judge Lucido's argument is not supported by law.

The touchstone for damages in procedural due process cases is *Carey v. Piphus*, 435 U.S. 247 (1978). In *Carey*, the Supreme Court held that compensation for injuries flowing from the deprivation of a constitutional right "should be tailored to the interests protected by the particular right in question". *Id*. at 259. In *Carey*, the Supreme Court held "compensatory damages for a procedural due process violation may not be awarded absent proof of actual injury. The Court further held, however, that even in the absence of such proof, 'the denial of procedural due process should be actionable for nominal damages.'" *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986) (quoting *Carey*, 435 U.S. at 266)). The Sixth Circuit has interpreted *Carey* to provide that the issue of whether compensatory damages should be awarded consists of two inquiries: "[t]he first inquiry concerns causation; whether the action taken without due process is justified or, in the other words, whether the same action would have been taken been if due process had been afforded....[t]he second inquiry is whether there is proof of actual injury, such as emotional or mental distress caused by the denial of due process, to support an award of

compensatory damages." *Franklin*, 795 F.2d at 1263. *Carey*, however, did not reach the particular issue of equitable relief.

An analogous case in the Eighth Circuit is instructive and persuasive on this issue. In *Hopkins v. Saunders*, 199 F.3d 968 (8th Cir. 2000), an employee was terminated from his job as director of the Division of Grain Inspection with the Missouri Department of Agriculture and brought a § 1983 action against the departmental official for, *inter alia*, a violation of procedural due process for failing to receive notice or a hearing before his termination. In *Saunders*, the Eighth Circuit had previously remanded the action to the district court to determine whether reinstatement and other equitable damages were appropriate after finding the defendant officials were entitled to qualified immunity in their individual capacities (but not shielded from prospective injunctive relief in their official capacities). *Id*. at 972-73; *see also Hopkins v. Saunders*, 93 F.3d 522 (8th Cir. 1996). On remand, the district court, after a hearing, determined that the plaintiff had a property interest in his job and his constitutional right to due process was violated when he did not receive notice or a hearing prior to termination. *Id*. at 975. However, the district court also found that the plaintiff was dismissed for cause "and therefore refused to reinstate him, instead awarding him only nominal damages." *Id*.

The parties both appealed and the Eighth Circuit affirmed the plaintiff's protected property interest in his position but held that the district court's award of nominal damages constituted "legal relief" rather than equitable and was therefore contrary to the earlier decision and remand (and also vacated the award). The Eighth Circuit then relied upon *Carey* in holding that federal law dictated the proper remedy for a procedural due process claim, explaining that

> [t[he Supreme Court defined the proper remedy for the denial of procedural due
> process in *Carey v. Piphus*, holding that the remedy for a procedural due process

> violation is defined by the extent of the injury that resulted from the denial of constitutionally required process.  435 U.S. at 263-64; *see also Peery v. Brakke*, 826 F.2d 740, 747 (8th Cir. 1987).  Thus, in the context of public employment, reinstatement is proper only where a tenured employee would not have been dismissed if his procedural due process right had been observed. ... <u>Where an employee would have been discharged even if he had received due process, i.e. was discharged for cause, his sole injury is the lack of process and only nominal damages are proper</u>.

*Saunders*, 199 F.3d at 979 (emphasis added); *see also Clark v. St. Joseph Pub. School Dist.*, 130 F. Supp. 2d 899, 905 (W.D. Mich. 2000) (relying on *Saunders* in finding that where an employee's due process rights were violated but she would have been discharged for cause regardless, "her sole injury is the lack of process and only nominal damages are proper.").  The Eighth Circuit then went on to find that under the "*Carey* remedial framework" the district court's finding (post-evidentiary hearing) that the plaintiff "would have been dismissed even if he had received due process" was supported by evidence and was not "clear error".  *Id.*

Significantly, the Eighth Circuit's holdings in *Saunders* are in line with the Sixth Circuit's interpretation of *Carey* - that the pertinent inquiry in determining the proper scope of damages in the context of a violation of procedural due process is "whether the action taken without due process is justified or, in the other words, whether the same action would have been taken if due process had been afforded".  *Franklin*, 795 F.2d at 1263 (analyzing *Carey*).  Indeed, this was borne out in *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 928 (6th Cir. 1988).  In *Newsome*, the Sixth Circuit addressed a plaintiff's claim of a violation of procedural due process in the context of a school expulsion.  The Sixth Circuit found that the plaintiff had been deprived of due process when a superintendent disclosed evidence to the school board during closed deliberations that had not been previously presented during an open hearing.  *Id*. at 927.  In reversing and remanding the case to the district court the Sixth Circuit relied upon *Carey* and

8

explained:

> To the extent that Newsome seeks money damages to compensate him for the violation of his fourteenth amendment right, he must demonstrate, on remand, that he suffered *actual* injury (such as mental and emotional distress) caused by the violation. To the extent that Newsome seeks reparative relief aimed at restoring him to the position he would have occupied but for the due process violation, he is entitled to such relief unless the *school district* can prove, by a preponderance of the evidence, that, even had it not deprived Newsome of his right to procedural due process, he would have still rightfully been expelled.

*Id*. at 928 (citing *Carey*, 435 U.S. 247 (1978)) (emphasis in original).

But here, after trial where the Defendant contended that Plaintiffs had been rightfully terminated, the jury determined that there was not "just cause" for Plaintiffs to be terminated, *i.e.* the defense did not convince the jury that Plaintiffs would have been terminated for cause regardless of whether they received a pre-termination hearing.  (*See* Case No. 04-73957, ECF No. 151, Jury Instructions at * 28, stating "In order to decide whether there was 'good or just cause' to terminate plaintiffs' employment, you must determine whether plaintiffs actually engaged in the conduct complained of by the defendant and whether the conduct was the actual reason for termination of plaintiffs' employment.  If a plaintiff did not engage in the conduct, or if a plaintiff's conduct was not the actual reason for termination, then "good or just cause" did not exist.  If you decide that a plaintiff did engage in the conduct, and that the conduct was the reason for termination, then you must decide whether a plaintiff's conduct amounted to 'good or just cause' for termination; that is, whether this employer would terminate this plaintiff for the stated reason.").[3]

---

[3] *See also* Jury Instructions at * 32 (regarding nominal damages), "If you find in favor of a plaintiff on her claim, but the defendant establishes by a preponderance of the evidence that she would have taken the same action to terminate the plaintiff's employment even if proper procedures were followed and the defendant's action was lawful, then you must return a verdict

The Sixth Circuit has also specifically held in the context of a due process violation relating to employment, that reinstatement and the elimination of all negative entries in a personnel file constituted appropriate prospective injunctive relief against public university officials. *Thomson v. Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995) (citing *Ex Parte Young*, 209 U.S. 123 (1908) and *Edelman v. Jordan*, 415 U.S. 651 (1974)).  More recently in *Pucci v. 19th District Court*, 628 F.3d 752 (6th Cir. 2010), a factually analogous case, the Sixth Circuit indicated the same, holding that a defendant judge was entitled to sovereign immunity in his official capacity with respect to damages and retrospective relief, but held that "the sovereign-immunity doctrine does not bar Pucci's suit ... against him in his official capacity with respect to declaratory and injunctive relief."  *Pucci*, 628 F.3d at 765.

Moreover, numerous United States Circuit Courts of Appeal that have addressed the scope of damages available in procedural due process actions have similarly found that reinstatement is an appropriate remedy.  *See Whalen v. Mass. Trial Court*, 397 F.3d 19, 28 (1st Cir. 2005) (barring the suit based on Eleventh Amendment grounds but explaining that "plaintiff's entitlement to more than nominal damages in a procedural due process case turns on whether the constitutional violation – the failure to provide a pre-termination opportunity to contest termination – did in fact cause the harm asserted– the loss of the job and related benefits. If [the plaintiff] would have been terminated even after a proper hearing, he would not be eligible for either reinstatement or damages flowing from his unemployment."); *Pace v. Moriarty*, 83 F.3d 261, 263 (8th Cir. 1996) (holding that while qualified immunity shielded a defendant from damage claims related to a denial of due process, the defendant officials were not

_____

for the plaintiff in the nominal amount of ($1) dollar on the procedural due process claim."

shielded from the plaintiff's claims "for reinstatement or other equitable remedies".); *Hopkins v. Saunders*, 93 F.3d at 527 (examined *supra*); *Mckinney v. Pate*, 20 F.3d 1550, 1561 (4th Cir. 1994) (*en banc*) (finding that the proper remedies for a procedural due process violation "include[s] reinstatement and the correction of any procedural defects in the means by which [the plaintiff] was terminated."); *see also Brody v. Village of Port Chester*, 345 F.3d 103, 119-20 (2d Cir. 2003) (in context of a due process violation involving the lack of proper notice in land condemnation proceedings, the court explained that "[t]he appropriate remedy for a proven due process violation often depends on the stage at which the violation is found and the relief sought" and holding that where the plaintiff was seeking the reconveyance of his property rather than monetary damages, the plaintiff "is entitled to a return of his property only if he can prove that any denial of due process made a difference in the condemnation proceedings.").

Finally, Defendant Chief Judge Lucido attempts to revisit the issue of damages and recast this action as one in which the Plaintiffs' injuries are merely the denial of pre-termination hearings.  This ignores the fact that a jury has already determined that Plaintiffs were terminated without good or just cause.  (*See* Case no. 04-73957, ECF No. 149, Jury Verdict Form; *see also* ECF No. 151, Jury Instructions, at 28, providing that "The defendant has the burden of proving that "good or just cause" existed for plaintiffs' termination.").  Accordingly, Defendant Chief Judge Lucido's insistence that Plaintiffs are not entitled to reinstatement because the scope of their injury was merely the failure to conduct pre-termination hearings rather than the actual loss of their employment is not persuasive.  (Def.'s Resp. at 5-7).  Defendant Chief Judge Lucido fails to cite to any analogous case law for his argument and instead relies upon *Carey v. Piphus*,

11

435 U.S. 247, 259 (1978) and *Peery v. Brakke*, 826 F.2d 740 (8th Cir. 1987).[4]  As noted

previously, in *Carey*, the Supreme Court held "compensatory damages for a procedural due

process violation may not be awarded absent proof of actual injury.  The Court further held,

however, that even in the absence of such proof, 'the denial of procedural due process should be

actionable for nominal damages.'" *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986)

(quoting *Carey*, 435 U.S. at 266)).  Notably, *Carey* did not address (or foreclose) the

applicability of any equitable remedies.

Additionally, the Eighth Circuit's decision in *Brakke* does not help Defendant Chief

Judge Lucido's position.  In *Brakke*, the Eighth Circuit found that reinstatement was not a proper

remedy "for an employee who was terminated <u>for cause</u> but denied procedural due process."

---

[4] Defendant Lucido also relies upon a sentence excerpted from *Christian v. Belcher*, 888 F.2d 410, 416-17 (6th Cir. 1989) for this general proposition.  (Def.'s Resp. at 13).  Taken in context, however, this excerpt from *Belcher* does not amount to an edict that reinstatement is never an appropriate equitable remedy to a violation of due process.  Rather, in *Belcher*, the Sixth Circuit noted in dicta that:

> For example, the Supreme Court has held that a nontenured state employee may prove [a protected property] interest by showing that the policies *and practices* of the employer justified his legitimate claim of entitlement to continued employment.  *Perry v. Sindermann*, 408 U.S. 593, 602-03 (1972).  While proof of such an interest does not entitle the employee to reinstatement, the employer is required to grant the employee's request for a hearing "where he could be informed of the grounds for his nonretention and challenge their sufficiency."  *Id.* at 603.

*Belcher*, 888 F.2d at 416-17 (emphasis in original).  This excerpt relies upon case law that predates *Carey v. Piphus*, 435 U.S. 247, 259 (1978) which is the seminal case regarding damages in a procedural due process case.  Significantly, this case can be read harmoniously with the above mentioned case law, including *Carey*, as merely evidencing that a property interest in one's employment would *not* entitle a plaintiff to reinstatement (just as merely evidencing a property interest in one's employment does not entitle a plaintiff to compensatory damages only nominal damages), however, where there has been a finding that the plaintiff would not have been terminated but for the lack of process then reinstatement *would* be a possible remedy.

*Brakke*, 826 F.2d at 747 (emphasis added).  In *Brakke*, a jury awarded the plaintiff, Peery, compensatory damages for a violation of his right to procedural due process.  *Id*. at 746-47. Thereafter, the plaintiff also filed a motion for reinstatement which the district court denied finding that "equitable relief should be granted or denied by the court in a manner that is consistent with the facts as found by the jury."  *Id*. at 746.  The Eighth Circuit affirmed the district court's decision denying reinstatement based on the fact that Peery was afforded the opportunity to "fully litigate[] the issue of whether cause existed for his termination in" the § 1983 action and the jury "found against him on this issue" and indicated the same in a special interrogatory on the verdict form.  *Id*. at 747.  Therefore, the key element in the conclusion that reinstatement was foreclosed in *Brakke* was the fact that the jury had failed to find that Peery was terminated without cause.  *Id*. at 742, 747.

As noted above, the jury in this case specifically found in their verdict that there was not good cause to terminate Plaintiffs.  (*See* Case no. 04-73957, ECF No. 149, Jury Verdict Form). *Barachkov II* neither disturbed nor addressed this jury finding.  Therefore, unlike *Brakke*, where a jury had determined that the plaintiff was terminated for cause and therefore a pre or post termination hearing would not have prevented his termination, here, a jury found the opposite and indicated that the Plaintiffs in this action *were terminated without just cause*.

In sum, Defendant Chief Judge Lucido's arguments regarding whether reinstatement is a proper remedy are all based on a fundamental misinterpretation of the case law.  Defendant Chief Judge Lucido argues that the Court only need focus on the constitutional deprivation: "[i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not itself unconstitutional; what is unconstitutional is the

13

deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (citation omitted). However, this tenet of constitutional law is not disturbed or implicated by the issue before this Court. In the present action a jury has held (and the Sixth Circuit affirmed) that Plaintiffs suffered a violation of their constitutional right to due process such that they had a property interest in their employment and could not be terminated without "just cause". The jury also determined that Plaintiffs were terminated without "just cause". Thus, the only pertinent issue before this Court is the appropriate relief to Plaintiffs for the deprivation of their constitutional right. Defendant Chief Judge Lucido's insistence that the only remedy of a due process violation is a pre or post termination hearing misses the point that in the instant action a jury has determined the *scope of Plaintiffs' damages* based on the unconstitutional deprivation of a property interest which *includes Plaintiffs' lost employment* because they were not terminated for "just cause".

Accordingly, the Court rejects Defendant Chief Judge Lucido's argument that reinstatement is not the "proper" remedy for a procedural due process violation.

B.   Whether Plaintiffs "waived" their right to seek reinstatement

Next, Defendant Chief Judge Lucido argues what the Seventh Circuit has described as "an issue that is dear to the heart of every lawyer seeking to bolster more elaborate arguments: waiver." *Baird v. Bd. of Educ. for Warren Comm. Unit School Dist. No. 205*, 389 F.3d 685, 694 (7th Cir. 2004). To that end, Defendant Chief Judge Lucido argues that Plaintiffs are not entitled to reinstatement because they waived their right to make such a claim and they elected their remedy at the time of trial by pursuing (and being awarded money damages). (Def.'s Resp. 13-17).

14

Defendant Chief Judge Lucido argues that Plaintiffs: (1) previously failed to amend their complaint to add a cause of action against Judge Lucido despite knowing that former Defendant Judge Davis was no longer chief judge; and (2) Plaintiffs waived or elected front pay as a remedy rather than pursue equitable remedies because Plaintiffs did not "seek reinstatement". (Def.'s Resp. at 13-14). These arguments are not well taken given the record. Indeed, after the first appeal and subsequent remand, Plaintiffs had moved for "Entry of Order Substituting Current Chief Judge" in March 2011. (Case No. 04-73977, ECF No. 129). Thereafter, in a April 14, 2011 Order, this Court concluded that the Plaintiffs could: "(1) Raise claims against Chief Judge Linda Davis in her personal capacity; and (2) Seek prospective injunctive relief against Chief Judge Linda Davis or her successor in her official capacity." (Case no. 04-73957, ECF No. 84 at 10). The Court also explicitly recognized in that Order that Fed. R. Civ. P. 25(d) provided that "a successor is automatically substituted as a party when a public official ceases to hold office while the action is pending." (*Id.*, at 10 n. 2). Therefore, Defendant Chief Judge Lucido's arguments regarding Plaintiffs' failure to pursue substitution of parties is off the mark.[5]

Additionally, it is clear from the record that Plaintiffs specifically pled reinstatement as an equitable remedy in their complaints and also referenced this remedy in their Final Pretrial Order under the heading "Damages":

> Note that Plaintiffs also seeks exemplary damages, punitive damagesm [sic], interest, costs an attorney fees, <u>and an order reinstating Plaintiffs, enjoining further acts in violation of the Constitution, and whatever over equitable relief appears appropriate</u>. Their damages include all those alleged in the operative complaint.

---

[5] The Court also notes that this topic was discussed in the Court's recent opinion re-captioning this case and granting in part Plaintiffs' motion to substitute the proper party in interest. (Case no. 04-73957, ECF No. 243, 7-8).

15

(Case no. 04-73957, ECF No. 91, at 18) (emphasis added).  Given these facts, the Court finds

Defendant Lucido's arguments related to waiver are unpersuasive.

Next, Defendant Lucido cites *EEOC v. Franks Nursery and Crafts, Inc.*, 177 F.3d 448,

464 (6th Cir. 1999) for the proposition that "[a] party who cho[o]ses between two coextensive,

but inconsistent remedies, elects, and loses the right to exercise the other remedy."  (Def.'s Resp.

at 15).  While Defendant Chief Judge Lucido attempts to assert this proposition generally under

his argument of waiver and estoppel, the citation from *Franks* provides the definition of "judicial

estoppel by the doctrine of remedies".  *Franks*, 177 F.3d at 464.  Defendant Chief Judge Lucido

also fails to note the next sentence in *Franks* that recognized that: "[s]ignificantly, courts have

long recognized .... the demise of this doctrine".  *Id*. (citation omitted).

Further, the Sixth Circuit has explained the "doctrine of election of remedies" as

applying:

> only where conflicting and inconsistent remedies are sought on the basis of
> conflicting and inconsistent rights.  Thus, where a suit is brought on a contract as
> written, a later, second, suit cannot be brought to reform that same contract.  <u>On
> the other hand, one may pursue a second remedy after seeking, unsuccessfully, a
> first remedy, if the claims are based upon consistent facts</u>.

*Newman v. Avco Corp*., 451 F.2d 743, 746-47 n. 1 (6th Cir. 1971) (emphasis added); *see also*

*Skyline Steel Corp. v. AJ Dupuis Co.*, 648 F.Supp. 360, 369 n. 5 (E.D. Mich. 1986) (examining

claim of election of remedies, declining to evaluate the "validity of the doctrine" because it did

not apply and explaining that "[a]n inconsistency of remedies means that a certain statement of

facts is relied upon as the basis to recover diametrically opposed remedies.").  Here, while

Defendant Chief Judge Lucido claims that front pay and reinstatement are "inconsistent" it

would be more accurate to state, as the Sixth Circuit has, that "the remedies of reinstatement and

16

front pay are alternative, rather than cumulative." *Suggs v. ServiceMaster Educ. Food Mgmt.*, 72 F.3d 1228, 1234 (6th Cir. 1996) (Title VII case).

Further, Defendant Chief Judge Lucido failed to identify any facts or law that Plaintiffs rely on to pursue reinstatement as an equitable remedy that are factually inconsistent with pursuing or being awarded compensatory damages or front pay. In sum, *Franks* is a case that does not address a factually analogous situation and actually provides that Defendant Chief Judge Lucido's proposition has long been disfavored. *See Franks*, 177 F.3d at 464.

Defendant Chief Judge Lucido then argues that Plaintiffs are "judicially estopped" from pursuing an "alternative, equitable remedy of reinstatement" because Plaintiffs only pursued "monetary damages" during trial and if Plaintiffs had requested reinstatement "it would have been incumbent upon this Court to determine whether reinstatement was appropriate." (Def.'s Resp. at 16, 17). The Sixth Circuit recently explained the equitable doctrine of judicial estoppel as preserving the "integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Bonkowski v. Allstate, Ins., Co.*, 544 F. App'x 597, 602 (6th Cir. 2013) (quoting *Teledyne Indus., Inc. v. Nat'l Labor Relations Bd.*, 911 F.2d 1214, 1217-18 (6th Cir. 1990)). "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id.* (quoting *Lorillard Tobacco Co. v. Chester, Willcox & Saxe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008)). The doctrine of judicial estoppel "bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a

prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Id*. (citation omitted).

The doctrine of judicial estoppel does not apply to the present circumstances. Plaintiffs pleaded for equitable relief in their complaints, appealed the right to pursue such relief, then preserved that right in their Final Pretrial Order. As examined *supra*, there is nothing inherently inconsistent or contrary between reinstatement or front pay – rather as the Sixth Circuit has noted that such remedies are "cumulative" and to award both over the same time period would result in a double recovery or a windfall. *See Suggs*, 72 F.3d at 1234. Again, Defendant Chief Judge Lucido has failed to point to any issue (factual or legal) that Plaintiffs established at trial that would undermine the award of reinstatement as an equitable remedy. Rather, Defendant Chief Judge Lucido merely argues that because the jury awarded front pay, Plaintiffs cannot now seek reinstatement after that award is vacated. Defendant Chief Judge Lucido also appears to argue that Plaintiffs should have presented evidence at trial in support of this remedy and failed to do so, but fails to indicate what evidence is missing from the record yet vital to the determination of reinstatement. However, Defendant Chief Judge Lucido does admit that it is within this Court's discretion whether to order reinstatement.

A recent decision on the issue of waiver or election of these remedies is *Burton v. Zwicker*, 978 F. Supp. 2d 759 (E.D. Ky. 2013), *aff'd* 577 F. App'x 555 (6th Cir. 2014). In *Zwicker*, a plaintiff alleged that his employer violated the Kentucky Civil Rights Act and claimed wrongful discharge because, *inter alia*, he refused to perjure himself in a discrimination case brought against his employer. *Id*. at 764. The jury returned a verdict for the plaintiff and awarded back pay, punitive damages as well as awards for emotional distress. *Id*. at 765. Post

18

verdict, the plaintiff filed a motion for reinstatement and interim front pay. "At trial, the Court specifically found that there was no evidence to justify an instruction to the jury on the issue of front pay ... [] in response, counsel for Burton requested that the Court order reinstatement if the jury found violations" of the Kentucky civil right statute. *Id*. The defendant, Zwicker, then argued that the plaintiff was "foreclosed from requesting reinstatement because at trial he elected to pursue front pay." *Id*. at 766. In denying the defendant's argument the district court noted that:

> In fact, "Courts generally award front pay when reinstatement is inappropriate or infeasible." [*Suggs*, 72 F.3d at 1234 (citation omitted)]. Thus, if a plaintiff elects to be reinstated and the Court finds it inappropriate, the plaintiff is not then foreclosed from seeking front pay as an alternative remedy.
>
> The same is true for the reverse, especially in this situation where Burton specifically reserved the right to seek reinstatement when advised by the Court that he had not submitted sufficient evidence to justify an instruction on front pay. [] *see also Selgas v. Am. Airlines, Inc*., 104 F.3d 9, 13 n. 2 (1st Cir. 1997) (finding that submission of a front pay determination to a jury does not constitute an election of front pay over reinstatement as a remedy); *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 796 (3d Cir. 1985) (stating that front pay was not waived where plaintiff specifically prayed for front pay and did not specifically disavow desire for reinstatement).

*Id*. at 766. The plaintiff in *Zwicker* argued (as the Plaintiffs do in this action) that the presumptively favored equitable remedy is reinstatement in employment discrimination or wrongful termination cases. *Id*. at 766-67. However, the district court held that while reinstatement could be granted in the ordinary case it is not always appropriate and the denial of a front pay award does not "require" that a court order a plaintiff to be reinstated. *Id*. at 767. The Sixth Circuit, in upholding the district court's decision to deny the plaintiff's motion for reinstatement, concluded that the district court did not abuse its discretion in denying the plaintiff's request for reinstatement because the plaintiff "had another job, and the district court

19

reasonably concluded that hostility would result if Burton returned to the Zwicker work environment". *Burton v. Zwicker*, 577 F. App'x 555, 567 (6th Cir. 2014) (emphasis added) (quoting *Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392, 398 (6th Cir. 1993)). In the instant case, Plaintiffs allege that they have not found other work.

The Court finds the reasoning in *Zwicker* persuasive that Plaintiffs did not waive their right to reinstatement. Just as a plaintiff does not waive a request for front pay after a request for reinstatement is rejected, a plaintiff should not be barred form pursuing reinstatement after the remedy of front pay is foreclosed. Here, the difference is merely in the timing as the award of front pay/compensatory damages was foreclosed by the Sixth Circuit on appeal rather than by this Court prior to or post trial. Moreover, Defendant Chief Judge Lucido has failed to cite any authority, nor could this Court find any, in which such a procedural posture is determinative of the ability of Plaintiffs to seek this equitable relief from the Court.

C.    Reinstatement

Having determined that reinstatement is a "proper" remedy in this action, the real issue becomes whether reinstatement is feasible or inappropriate as the facts stand today.

As stated *supra* at page 19, the Sixth Circuit has noted that "while reinstatement should be granted in the ordinary case, it is an equitable remedy which is not appropriate in every case, such as where the plaintiff has found other work, where reinstatement would require displacement of a non-culpable employee, or where hostility would result." *Roush v. KFC Nat'l Mgmt. Co.*, *supra* at 398 (6th Cir. 1993); *cited with approval in Zwicker*, 577 F. App'x at 567.[6]

---

[6] Plaintiffs and Defendant disagree over whether reinstatement is the presumptive remedy in this type of action. The presumption of reinstatement as a remedy arises in both Title VII and § 1983 cases. The Sixth Circuit has indicated that "[c]ourts have generally treated

The Sixth Circuit has explained that while it is appropriate to deny reinstatement when it "would displace a non-culpable employee or where hostility would result" or where the employer's "genuine dissatisfaction with an employee's job performance",

> "the basis upon which reinstatements ... may be denied must be more compelling than the personal preferences and distrusts which accompanied the initial discriminatory activity. 'It is not enough that reinstatement might have "disturbing consequences," that it might revive old antagonisms, or that it could "breed difficult working conditions" [because] <u>r]elief is not restricted to that which will be pleasing and free of irritation.</u>'

*Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1396 (6th Cir. 1990) (quoting *In re Lewis v.*

---

remedies under § 1983 and Title VII as comparable." *Grace v. City of Detroit*, 216 F. App'x 485, (citing *Squires v. Bonser*, 54 F.3d 168, 172 (3rd Cir. 1995)). However, the § 1983 cases in which courts discuss reinstatement as the "presumptive" are those cases in which actual termination (demotion or failure to hire) was unconstitutional. *E.g. Gutzwiller v. Fenik*, 860 F.2d 1317, 1333 (6th Cir. 1988) ("The equitable remedies awarded under both section 1983 and Title VII have the goal of making persons whole for injuries suffered on account of unlawful employment discrimination."); *Banks v. Burkich*, 788 F.32d 1161, 1165 (6th Cir. 1986) (finding that "reinstatement might have 'disturbing consequences,' 'revive old antagonisms,' or 'breed difficult working conditions' usually is not enough 'to outweigh the important first amendment policies that reinstatement serves [absent] probable adverse consequences [that] weigh so heavily that they counsel the court against imposing this preferred remedy." (citation omitted); *In re Lewis*, 845 F.2d 624, 631 (6th Cir. 1988) ("Once discrimination is found, reinstatement should be granted absent exceptional circumstances."); *Squires v. Bonser*, 54 F.3d 168 (3rd Cir 1995) (noting that "the make-whole goal does not differ when the basis of the underlying right is the Constitution rather than a statute such as Title VII. Because of this consonance of the underlying policy consideration, the framework of analysis governing reinstatement in Title VII actions also governs in § 1983 actions implicating First Amendment concerns....") (internal citation and changes omitted).

Therefore, it may be *arguable* that a such a presumption does not arise in a § 1983 procedural due process case where the unconstitutional action is the denial of process rather than an unconstitutional firing. However, such parsing is of no moment in the present case because, as illustrated from the case law examined *supra*, reinstatement is a proper form of relief for the denial of procedural due process once evidence has been adduced to show that but for the lack of process the plaintiff would not have lost her job (*i.e.* there was no just cause to terminate). This is also in line with the general goal of § 1983, which is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Squires v. Bonser*, 54 F.3d 168, 172 (3rd Cir. 1995) (quoting *Wyatt v. Cole*, 504 U.S. 158, 161 (1990)).

21

*Sears, Roebuck & Co.*, 845 F.2d 624, 630 (6th Cir. 1988)) (emphasis added).

Plaintiffs have not found other work. Plaintiffs have submitted affidavits supporting their proposition that (1) they harbor no ill-will towards the sitting judges, Chief Judge Lucido, Judge Davis, or Judge Fuca, or towards court employees and (2) they have the ability to accomplish the necessary training, combined with the experience necessary to perform the duties of 41B District Court Clerks. (*See* Case no. 04-73957, ECF No. 245, Pls.' Reply, Ex. B). Defendant Chief Judge Lucido argues, on the other hand, that Plaintiffs cannot be returned to their positions for numerous reasons: (1) Plaintiffs' positions no longer exist and they are not qualified for the new positions; (2) reinstatement would require the elimination of three other employees; (3) Plaintiffs do not have the proper training to perform the duties of the new positions they would fill; (4) Defendant Chief Judge Lucido "could not return Plaintiffs to a position of trust or confidence within the Court because of their past conduct and this ongoing litigation and such reinstatement would "create tension, hostility, animosity, and possibility of retaliation by Plaintiffs against [other] employees". The Court addresses each argument below.

1. <u>Training</u>

Defendant Chief Judge Lucido argues that Plaintiffs are not trained on the programs and software used by the 41B District Court given the number of years that have elapsed since Plaintiffs' termination. Plaintiffs dispute these assertions and set forth their qualifications through their affidavits. (*See* Pls.' Reply, Ex. B). Defendant's argument is unpersuasive as on-the-job training can be provided.

2. <u>Positions</u>

To the extent that Defendant Chief Judge Lucido argues that Plaintiffs' prior job

positions no longer exist, it is likely that comparable positions exist but may have received new names and may include additional duties. (*Id*.). Therefore, this factor goes back to the obligation of Defendant to provide applicable training. Additionally, given the number of years that Plaintiffs worked for the 41B District Court it is likely that but for their terminations Plaintiffs would have remained in their positions or similar positions despite the "new duties" being added or the consolidation of the buildings. Accordingly, this factor does not weigh against Plaintiffs reinstatement.

       3.      Elimination or Displacement of Innocent Employees

 Defendant Chief Judge Lucido also contends that non-culpable employees will be displaced if Plaintiffs are reinstated. Defendant Chief Judge Lucido notes that the 41B District Court's budget allows for 17 full-time and 6 part-time Clerks, and 2 full-time and 2 part-time Probation Officers. (Def.'s Resp., Ex. D, Kim Silvestro Aff. ¶ 4). Defendant Chief Judge Lucido also provides that all of the employees at the 41B District Court are union members of MI AFSCME Counsel 25, Local 1809, AFL-CIO and pursuant to a collective bargaining agreement these employees cannot be unilaterally terminated. (*Id*. at ¶¶ 24-25).

As an initial matter, whether the current employees of the 41B District Court are union members is not a persuasive argument regarding whether these Plaintiffs are entitled to reinstatement. The Plaintiffs, if reinstated, could obviously become members of the union. As to the consequences of displacing employees under a collective bargaining agreement, while such a result may be difficult for Defendant Chief Judge Lucido, that does not support denying Plaintiffs the positions that a jury has determined they were terminated from without just cause in violation of their constitutional rights. Plaintiffs also argue that under a collective bargaining

23

agreement the innocent third parties would be in a better position to negotiate possible severance than a person who was working at will with no union.

The Sixth Circuit has held a district court order of reinstatement was not an abuse of discretion even when "reinstatement would unduly displace an innocent third party or result in unnecessary hostility." *Fuhr v. Sch. Dist. of the City of Hazel Park*, 364 F.3d 753 (6th Cir. 2004). In *Fuhr*, a Title VII case based on gender discrimination, the Sixth Circuit affirmed the district court's order instating the plaintiff to a varsity basketball coaching position despite the fact that such an action would "bump" an innocent third party from the position. The Sixth Circuit noted that while there were cases in which courts had found that it was not appropriate to order a plaintiff be reinstated or instated (in failure to hire or promote cases) to a position, "[t]hese cases demonstrate only that the district court probably would not have abused its discretion had it denied Fuhr equitable relief. They do not support the contention that the district court abused its discretion by granting it." *Id*. at 761. Further, the Sixth Circuit noted that the district court had properly weighed the hardships of both the plaintiff, the innocent third party, and also the school district and had "made specific mention of the fact that it was considering Barnett's status as an innocent incumbent" but recognized that denying the plaintiff an equitable remedy would perpetuate the wrongs that had been proven and therefore reinstatement was appropriate. *Id*. So too in this case.

Here, as in *Fuhr*, the Plaintiffs' reinstatement will likely displace innocent third parties from their positions – a most unfortunate circumstance. However, this fact must be weighed against the fact that Plaintiffs were denied their constitutional rights to due process more than eleven years ago: a jury determined that they were fired without just cause, and that the denial of

that due process cost them their positions at the 41B District Court.  Plaintiffs have submitted affidavits supporting their claims of financial and emotional distress since the loss of their jobs.  Thus, reinstatement should be granted in this case.

     4.    <u>No confidence in Plaintiffs and/or Feelings of Animosity after 10 years of Litigation</u>

Defendant Chief Judge Lucido argues that Plaintiffs should not be reinstated because of the hostility that exists between Plaintiffs, the current staff, and the sitting judges.  Additionally, Defendant Chief Judge Lucido argues that Plaintiffs cannot be returned to positions of trust because they were determined to be liars in the SCAO investigation.

Defendant Chief Judge Lucido asserts that many current employees at the court and former Defendant Judge Davis testified during this trial that the Plaintiffs lied, withheld information and attempted to coerce others to lie during the SCAO investigation.  Defendant Chief Judge Lucido argues that this, coupled with the many (almost eleven) years of litigation, would result in "tension, hostility, animosity, and the possibility of retaliation by Plaintiffs against these employees."  (Def.'s Resp. at 25-28).

On the other hand, Plaintiffs maintain in their affidavits that they harbor no ill will against those who work at the 41B District Court.  (Case No. 04-73957, ECF no. 245, Pls.' Reply, Ex. A, Plaintiffs' Affidavits).  Plaintiffs also attest that they have had little or no interaction with Judge Fuca and Defendant Chief Judge Lucido.  (*Id*.).  Additionally, Plaintiffs note that the long litigation of this case weighs in their favor because any hostility would have cooled and there are likely new employees that would not have had any involvement in the case.

In *McKelvey v. Sec't of U.S. Army*, the Sixth Circuit upheld a district court's award of reinstatement <u>over</u> the plaintiff's objection to being reinstated finding that "such feelings likely

exist in every discrimination case and are mitigated here by the fact that, were McKelvey to return to the armory, his supervisors and four of his six co-workers would be new, with no connection to the harassment he suffered."  450 F. App'x 532, 537 (6th Cir. 2011) (internal quotation marks removed, citation omitted).  In the present action, while some, or even many of Plaintiffs' coworkers likely remain employed at 41B (and some testified against them), former Defendant then-chief Judge Davis would no longer be their direct report.  The affidavits also indicate that the Plaintiffs have had little or no interactions with Defendant Chief Judge Lucido who would be their new direct report or with the third judge on the bench, Judge Carrie Fuca. There is no evidence that Defendant Chief Judge Lucido would be unable to work with Plaintiffs, or evidence that contests Plaintiffs' affidavits that their contact with him was extremely limited.

     5.    *Loudermill* Hearing

As a last argument against reinstatement, Defendant Chief Judge Lucido resurrects the argument that Plaintiffs are only entitled to a pre-termination hearing to dispute the charges against them.  While Defendant Chief Judge Lucido is correct in noting that the case law that Plaintiffs rely upon regarding reinstatement are all cases in which the employment decision itself was wrongful (e.g. Title VII cases and §1983 cases involving the First Amendment and Equal Protection), the Sixth Circuit and numerous other circuits, as discussed previously, have found that reinstatement is a proper remedy for a procedural due process violation when but for the lack of due process the plaintiff would not have lost his or her job.  Here, a jury has determined that Plaintiffs were "for cause" employees with a property interest in their employment and they were not fired "for cause".  Therefore, the Court is bound by these determinations that remain

undisturbed by the Sixth Circuit.

Indeed, the overriding problem with Defendant Chief Judge Lucido's argument is apparent in this statement: "The litigation process has polarized the parties and from Defendant's perspective confirmed that good cause exists for the termination of Plaintiffs' employment. Defendants are convinced that Plaintiffs are not capable of serving as 41B District Court employees." (Def.'s Resp. at 27). This statement reveals that any *Loudermill* hearing before Defendant Chief Judge Lucido to determine (eleven years later) whether Plaintiffs lied during the SCAO investigation is an empty gesture in every sense of the word. And second, the statement highlights why the Sixth Circuit and other courts have found that animosity or hard feelings surrounding litigation cannot be an escape hatch for employers who have violated an employee's constitutional rights; because inevitably "[e]nforcement of constitutional rights frequently has disturbing consequences. Relief is not restricted to that which will be pleasing and free of irritation." *Banks v. Burkich*, 788 F.32d 1161, 1165 (6th Cir. 1986) (citation omitted). Indeed, "[m]ere hostility by the employer or its supervisory employees is of course no ground for denying reinstatement ... That would arm the employer to defeat the court's remedial order" every single time. *McKnight v. Gen. Motors Corp*. 908 F.2d 104, 116 (7th Cir. 1990).

6. Conclusion

The Court concludes that reinstatement is the appropriate remedy in this action. Plaintiffs should be provided with the training necessary to accomplish any new tasks, and their affidavits, and their long work history with the 41B District Court prior to their termination supports the conclusion that they can be successfully integrated into their new positions with such training. While there is the possibility of some initial hostility, the Court believes that the

27

Defendant Chief Judge Sebastian Lucido will honor the findings of the jury, and the rulings of the United States Court of Appeals for the Sixth Circuit, and this Court, and proceed in good faith to carry out this Order.  Plaintiffs were wrongfully terminated from their positions *eleven* years ago.  To fail to implement the remedy of reinstatement to Plaintiffs – their only remedy – would reward the violation of their constitutional rights.

> D.   Other Prospective Relief

Defendant Chief Judge Lucido's pleadings did not address or oppose Plaintiffs requested relief to conform Plaintiffs' personnel files to the jury's verdict.  (*See* Pls.' Reply at 21). Defendant Chief Judge Lucido did oppose any such action during oral argument.  The Court finds that such injunctive relief is necessary and proper.

## IV. CONCLUSION

For all the reasons set forth above, the Court GRANTS Plaintiffs' Emergency motion for relief; Defendant Chief Judge Sebastian Lucido in his official capacity is ordered to immediately develop a plan within the next 60 days to REINSTATE Plaintiffs to their comparable positions of employment with the 41B District Court and conform Plaintiffs' personnel files to reflect the jury's verdict.  (ECF No. 225).

IT IS SO ORDERED.

s/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 3, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 3, 2015.

s/Deborah Tofil
Case Manager